CITY OF SOUTH HAVEN v VAN BUREN COUNTY
BOARD OF COMMISSIONERS

Docket No. 264269. Submitted February 8, 2006, at Grand Rapids. Decided March 14, 2006, at 9:00 a.m. Leave to appeal sought.

The city of South Haven brought an action in the Van Buren Circuit Court against the Van Buren County Board of Commissioners, the Van Buren County Board of County Road Commissioners, and the Van Buren County Treasurer, seeking various forms of relief in connection with its claim that it was entitled under MCL 224.20b(2) to a portion of the revenue from a road millage levy. The court, William C. Buhl, J., denied the plaintiff summary disposition and granted the defendants summary disposition under MCR 2.116(C)(4) on the grounds that the Tax Tribunal had exclusive jurisdiction over the case. In the alternative, the court granted the county road commission summary disposition under MCR 2.116(C)(8), concluding that the county road commission was not a proper party to the action. The court also determined that the funds had been distributed properly under MCL 224.20b. The plaintiff appealed.

The Court of Appeals *held*:

1. The trial court erred by concluding that the Tax Tribunal has exclusive jurisdiction over this case. The plaintiff is not challenging the validity of the road millage levy. Rather, the plaintiff alleges that the county misallocated the funds generated by the millage, contrary to the dictates of MCL 224.20b. The proper allocation of revenue under that statute is not a question relating to assessment, valuation, rates, special assessments, allocation, or equalization under the property tax laws or involving the refund or redetermination of a tax under the property tax laws, and thus is not within the Tax Tribunal's exclusive jurisdiction under MCL 205.731.

2. The trial court properly granted summary disposition to the county road commission. The county road commission has no authority under MCL 224.20b(2) to allocate and distribute the revenues collected and, consequently, no obligation to ensure that the statutory formula for distributing the revenues is followed. Thus, the county road commission is not a proper party to this action.

3. The trial court erred by concluding that the plaintiff was not entitled to a portion of the revenues from the road millage. MCL 224.20b(1) authorizes a tax levy for specific highway, road, or street purposes. MCL 224.20b(2) specifies how revenues from that levy are to be allocated and distributed, requiring a portion to go to cities and villages. The levy in this case was approved for county roads, and the defendants argue that distributing the revenue to cities and villages having no county roads would violate the statute's implicit directive that the revenue be spent in the manner approved by the voters. MCL 224.20b(2), however, allows a county board of commissioners and the governing bodies of the cities and villages to agree to spend the proceeds of a tax levy for the specific purposes approved without making the allocation and distribution otherwise required. While this is a cumbersome and difficult procedure for raising and spending money on specific road projects, it is the only approach authorized by the statute to avoid the mandatory formula requiring allocation and distribution to cities and villages.

Affirmed in part, reversed in part, and remanded for further proceedings.

1. TAXATION — TAX TRIBUNAL — JURISDICTION — ROAD MILLAGES.

The Tax Tribunal does not have exclusive jurisdiction over cases relating to the allocation and distribution of revenues of a tax levied for highway, road, and street purposes (MCL 205.731, 224.20b).

2. HIGHWAYS — TAXATION FOR HIGHWAY, ROAD, OR STREET PURPOSES — ALLOCATION AND DISTRIBUTION OF ROAD MILLAGES.

A tax levied for specific highway, road, or street purposes is subject to the mandatory allocation and distribution formula of the general highway law, which requires a distribution to cities and villages unless the county board of commissioners, before it submits the specific levy to the voters for approval, agrees with the governing boards of the cities and villages within the county to spend the proceeds of the levy for the specific purpose without the allocations and distributions otherwise required (MCL 224.20b[1], [2]).

*Law, Weathers & Richardson, P.C.* (by *Michael J. Roth* and *James C. Komondy*), for the city of South Haven.

*Schuitmaker, Cooper, Schuitmaker & Cypher, P.C.* (by *Harold Schuitmaker* and *M. Brian Knotek*), for the Van Buren County Board of Commissioners and the Van Buren County Treasurer.

*Kelly L. Page* and *Varnum, Riddering, Schmidt & Howlett LLP* (by *Eric J. Guerin*) for the Van Buren County Board of County Road Commissioners.

Before: BANDSTRA, P.J., and WHITE and FORT HOOD, JJ.

BANDSTRA, P.J. This case raises a number of questions under § 20b of chapter 4 of the general highway law, MCL 224.20b. We conclude that the Tax Tribunal does not have exclusive jurisdiction over claims regarding the proper distribution of funds raised under that section. We also conclude that a county road commission, which is merely the recipient of funds raised under that section, is not properly a defendant to claims challenging the distribution. Further, we conclude that the section's formula for distributing funds raised pursuant to a road tax millage must be followed, even with respect to millages for specific road projects, unless there is an agreement otherwise by the affected cities and villages.

BACKGROUND FACTS

This case arose out of a dispute over the distribution of revenues raised from the Van Buren County road millage, which was first approved by the voters in 1978 and which has been renewed regularly in succeeding elections. The purpose for the road millage, as presented to the electorate, was the construction, maintenance, and repair of county roads (local and primary); funds raised have been allocated exclusively to the county road commission for that purpose. Plaintiff city

of South Haven alleged that it was entitled to a portion
of the road millage proceeds under MCL 224.20b(2).
Specifically, plaintiff alleged that the county defen-
dants[1] breached their statutory fiduciary duty to prop-
erly distribute the road millage; requested a writ of
mandamus to have defendants remit plaintiff's portion
of the millage; sought restitution, interest, and costs;
requested that the trial court issue a declaratory judg-
ment that plaintiff was entitled to road millage distri-
butions; and alleged that defendants converted plain-
tiff's portion of the road millage for their own use and
benefit.

The trial court denied plaintiff's motion for summary
disposition under MCR 2.116(C)(10). The trial court
granted summary disposition in favor of defendants
under MCR 2.116(C)(4) on the grounds that the case
was within the exclusive jurisdiction of the Michigan
Tax Tribunal.[2] In the alternative, the trial court
granted summary disposition in favor of the county
road commission under MCR 2.116(C)(8) on the
grounds that plaintiff failed to state a claim on which
relief could be granted. Specifically, the trial court
determined that the county road commission was not a

---

[1] Helen Makay was named a defendant in her official capacity as the
Van Buren County Treasurer. Her legal interests are identical to those of
the board of commissioners on this appeal, and we will not refer to her
separately.

[2] The board of commissioners and the treasurer responded to plaintiff's
motion for summary disposition, but did not join the county road
commission in its motion for summary disposition. However, in its order
granting summary disposition to the county road commission pursuant
to MCR 2.116(C)(4), the trial court implied that its decision applied to
these parties as well. The trial court stated, in pertinent part, that "this
Court lacks subject matter jurisdiction over the claims raised in Plain-
tiff's Complaint" and that "[t]his Order disposes of all of Plaintiff's
claims as well as the last pending claim and closes the case." We believe
that the trial court's decision applied to all defendants in the present
case.

proper party to the action because, contrary to plaintiff's assertion, the county road commission did not have a duty to enter into a distribution agreement. Rather, the county road commission only had a duty to spend funds in accordance with the purpose for which those funds were distributed to it. Additionally, the trial court disagreed with plaintiff's reading of MCL 224.20b and found that the monies were distributed in accordance with the statute.

### TAX TRIBUNAL JURISDICTION

Plaintiff argues that the trial court erred in granting summary disposition in favor of defendants on jurisdictional grounds. We agree. We review de novo a trial court's grant or denial of a motion for summary disposition. *Kroon-Harris v Michigan*, 267 Mich App 353, 357; 704 NW2d 740 (2005). "Jurisdictional questions under MCR 2.116(C)(4) are questions of law that are also reviewed de novo." *Travelers Ins Co v Detroit Edison Co*, 465 Mich 185, 205; 631 NW2d 733 (2001). When reviewing a motion under MCR 2.116(C)(4), we must determine whether the pleadings demonstrate that the defendant was entitled to judgment as a matter of law or whether the affidavits and other proofs show there was no genuine issue of material fact. *Bock v Gen Motors Corp*, 247 Mich App 705, 710; 637 NW2d 825 (2001).

MCL 600.605 provides that "[c]ircuit courts have original jurisdiction to hear and determine all civil claims and remedies, except where exclusive jurisdiction is given in the constitution or by statute to some other court or where the circuit courts are denied jurisdiction by the constitution or statutes of this state." MCL 205.731 provides:

> The [tax] tribunal's exclusive and original jurisdiction shall be:
>
> (a) A proceeding for direct review of a final decision, finding, ruling, determination, or order of an agency relating to assessment, valuation, rates, special assessments, allocation, or equalization, under property tax laws.
>
> (b) A proceeding for refund or redetermination of a tax under the property tax laws.

As used in the Tax Tribunal Act, " '[a]gency' means a board, official, or administrative agency who is empowered to make a decision, finding, ruling, assessment, determination, or order that is subject to review under the jurisdiction of the tribunal or who has collected a tax for which refund is claimed." MCL 205.703(a).

In *Highland-Howell Dev Co, LLC v Marion Twp*, 469 Mich 673; 677 NW2d 810 (2004), our Supreme Court discussed at length two seminal cases addressing the scope of the Tax Tribunal's jurisdiction: *Wikman v City of Novi*, 413 Mich 617; 322 NW2d 103 (1982), and *Romulus City Treasurer v Wayne Co Drain Comm'r*, 413 Mich 728; 322 NW2d 152 (1982).

> In *Wikman*, the plaintiffs sought injunctive relief in the circuit court, alleging that the special assessments imposed on them had been determined in an arbitrary and capricious manner. This Court ruled, inter alia, that the challenge to the special assessments was within the exclusive jurisdiction of the Tax Tribunal because the action was one "seeking direct review of the governmental unit's decision concerning a special assessment for a public improvement." *Wikman* at 626.
>
> Unlike the direct challenge to the special assessment in *Wikman*, the plaintiffs in *Romulus City Treasurer* filed a constructive fraud claim in the circuit court, challenging the drain commissioner's use of funds collected through special assessments. This Court held that the circuit court had jurisdiction to hear the case because the question was

whether the drain commissioner could pay administrative costs with special assessment funds and, therefore, this question was outside the exclusive jurisdiction of the Tax Tribunal.

In reaching the decision in *Romulus City Treasurer*, this Court noted that MCL 205.721 designates the Tax Tribunal as a " 'quasi-judicial agency' " comprised of seven members; only two must be attorneys with experience either in property tax matters or in the discharge of a judicial or quasi-judicial office. *Romulus City Treasurer* at 737. In addition,

"[o]ne member must be a certified assessor; one, an experienced professional real estate appraiser; and one, a certified public accountant with experience in state-local tax matters. Not more than three of the seven members are to be members of any one professional discipline and persons who are not members of any of the enumerated disciplines are required to have experience in state or local tax matters.

"The expertise of the tribunal members can be seen to relate primarily to questions concerning the factual underpinnings of taxes. [*Id.*]"

This Court also noted that the Tax Tribunal's membership is qualified to resolve disputes concerning assessments, valuations, rates, allocation, and equalization, as well as to determine whether special assessments are levied according to the benefits received. *Id.* [*Highland-Howell, supra* at 677-678.]

After discussing these differences between the cases, the Court stated:

While the Tax Tribunal's membership is particularly competent to resolve disputes related to the basis for and amounts of taxes, its membership is not qualified to resolve common-law tort or contract claims. Clearly, this supports our conclusion that the Legislature did not intend the Tax Tribunal's exclusive jurisdiction to encompass matters outside the realm of those tax matters specified in the statute. [*Id.* at 678.]

In *Romulus City Treasurer*, *supra* at 736, the plaintiffs alleged that the defendant drain commissioner collected monies through special assessment procedures and used it to pay his administrative expenses rather than placing it in the revolving drain fund, that administrative expenses were not an enumerated use of the funds, and that funds currently held in escrow were earmarked for future administrative expenses. The plaintiffs alleged that these actions constituted a constructive fraud. *Id.* Our Supreme Court distinguished these claims from those of the plaintiffs in *Wikman*, who challenged the validity of a special assessment, stating:

> The focus of the present claim concerns not the factual underpinnings of the pertinent assessments, but rather how funds collected pursuant to the special assessment laws may be spent. . . .

> \* \* \*

> . . . Although the tribunal, in making its determinations, will make conclusions of law, MCL 205.751; MSA 7.650(51), the matters within its jurisdiction under MCL 205.731; MSA 7.650(31) most clearly relate to the basis for a tax, and much less clearly to the proper uses which may be made of the funds once collected. Questions concerning how the funds collected may be expended do not appear to be implicated in disputes related to assessments, valuations, rates, allocation and equalization. . . .

> . . . Because questions as to the lawful expenditure of funds do not arise within the other matters within the tribunal's jurisdiction, and because the tribunal's expertise relates much more directly to other questions concerning the lawfulness of challenged special assessments, we cannot assume that the Legislature intended to divest the circuit court of its equitable jurisdiction to grant declaratory and injunctive relief in matters involving the appropriate use of funds collected under the guise of special assessment laws. [*Id.* at 736-739.]

The present case falls in line with *Romulus City Treasurer*. Plaintiff is not challenging the validity of the road millage levy. Plaintiff's allegation is that the county misallocated the funds generated from the road millage. Plaintiff's contention is that the board of county commissioners and the treasurer improperly gave the funds resulting from the millage vote to the county road commission, contrary to what plaintiff contends are the dictates of MCL 224.20b. Plaintiff does not challenge the "factual underpinnings" of the road millage levied.

Therefore, we conclude that whether defendants were required to allocate the road millage funds according to the formula in MCL 224.20b(2) is not a question "relating to assessment, valuation, rates, special assessments, allocation, or equalization," or involving the "refund or redetermination of a tax," under the property tax laws, within the meaning of MCL 205.731. The trial court erred in concluding that the Tax Tribunal has exclusive jurisdiction over this case.

### COUNTY ROAD COMMISSION AS A PARTY

Plaintiff next argues that the trial court erred in granting summary disposition in favor of the county road commission under MCR 2.116(C)(8) on the grounds that the county road commission was not a proper party to this action.[3] We disagree. We review de novo a trial court's grant or denial of a motion for summary disposition under MCR 2.116(C)(8). *Johnson-McIntosh v Detroit*, 266 Mich App 318, 322; 701 NW2d 179 (2005). MCR 2.116(C)(8) tests the legal sufficiency of the pleadings standing alone, and the motion must be

---

[3] Although the trial court found that it did not have jurisdiction, as discussed above, it nonetheless articulated conclusions on the other issues now before us on appeal.

granted if no factual development could justify the plaintiff's claim for relief. *Johnson-McIntosh, supra* at 322.

Plaintiff maintains that the county road commission is a proper party to the present case because it owed plaintiff a duty under MCL 224.20b. Plaintiff contends that, because the county road commission's exclusive authority to spend the road millage revenues arises under MCL 224.20b, it had a duty to ensure that it spent those revenues in compliance with the statute. However, plaintiff's claims are based on its allegation that the road millage revenues were misallocated to the road commission. As quoted below, MCL 224.20b(1) authorizes the "board of commissioners of any county by proper resolution" to submit to the county's electorate the question of a tax levy for highway, road, and street purposes. MCL 224.20b(2) requires that the revenues derived from the tax levy be allocated and distributed by the county treasurer. Although the county road commission received the revenues, it had no authority to allocate and distribute them and, thus, no obligation to ensure that the statutory formula was followed. Plaintiff concedes that "MCL 224.20b plainly states that it is the role of the County and its treasurer to make the distribution in the manner provided." Because the county road commission had no duty to distribute the road millage, it is not a proper party to this lawsuit and the trial court properly granted summary disposition in favor of the county road commission on that basis.

### MCL 224.20b

Plaintiff next argues that the trial court erred in ruling that it was not entitled to a return of proceeds from the road millage levied by the county under MCL

224.20b as a matter of law. We agree. We review de novo a trial court's decision on a motion for summary disposition under MCR 2.116(C)(10). *Dressel v Ameribank*, 468 Mich 557, 561; 664 NW2d 151 (2003). Further, the decision at issue here is strictly one of statutory interpretation, which we also review de novo. *Echelon Homes, LLC v Carter Lumber Co*, 472 Mich 192, 196; 694 NW2d 544 (2005). In reviewing questions of statutory construction, our purpose is to discern and give effect to the intent of the Legislature. We begin by examining the plain language of the statute, affording the words their plain and ordinary meaning. If that language is unambiguous, we presume that the Legislature intended the meaning clearly expressed and no further judicial construction is required or permitted—the statute must be enforced as written. *Id.*

MCL 224.20b provides:

> (1) Notwithstanding any other provision of this act, the board of commissioners of any county by proper resolution may submit to the electorate of the county at any general or special election the question of a tax levy for highway, road and street purposes or for 1 or more specific highway, road or street purposes, including but not limited to bridges, as may be specified by the board.

> (2) Unless otherwise agreed by the governing bodies of the cities and villages and the board of county road commissioners the revenues derived from the tax levy authorized by this section shall be allocated and distributed by the county treasurer as follows:

> (a) To the county road fund:

> (i) A percentage of the total revenues equal to the proportion that the state equalized valuation of the unincorporated area of the county bears to the total state equalized value of the county.

> (ii) A percentage of the remainder of the revenues equal to the proportion that the county primary road mileage

within cities and villages bears to the total of the city and village major street mileage in the county plus the county primary road mileage within cities and villages in the county. The mileages to be used are the most recent mileages as certified by the state highway commission.

(b) The remaining revenues shall be distributed to the cities and villages in the proportion that the state equalized valuation of each bears to the total state equalized valuation of the incorporated areas of the county.

(3) The revenues allocated to the cities and villages shall be expended exclusively for highway, road and street purposes. The revenues allocated to the county road fund shall be expended by the board of county road commissioners exclusively for highway, road and street purposes.

(4) Notwithstanding the provisions of section 22 of this chapter, section 7 of Act No. 156 of the Public Acts of 1851, as amended, being section 46.7 of the Compiled Laws of 1948, or section 1 of Act No. 28 of the Public Acts of 1911, being section 141.71 of the Compiled Laws of 1948, a board of county commissioners shall not submit to the electorate of the county the question of a tax levy for any highway, road or street purpose, including but not limited to bridges, nor submit the question of borrowing money for any such purpose, to be voted upon at any election held on or after September 1, 1971 unless the revenues or proceeds are allocated and distributed in the same manner as the revenues derived from a tax levy authorized by this section.

Plaintiff argues that under subsection 2, it is entitled to a portion of the road millage levied by the county and distributed to the county road commission from 1978 to the present. Defendants argue that, under plaintiff's interpretation of the statute, the county would be prevented from proposing a levy for "specific highway, road or street purposes," even though such a levy is specifically authorized by subsection 1. They contend that requiring a levy such as the one in this case, approved specifically for primary county roads and local

county roads, to be distributed to cities and villages that contain no such roads would violate the statute's implicit directive[4] that the proceeds of a levy approved by the voters must be spent in the manner approved by the voters. They argue that plaintiff's interpretation of the statute renders subsection 1 nugatory, in contravention of well-established principles. *Bageris v Brandon Twp*, 264 Mich App 156, 162; 691 NW2d 459 (2004).

However, defendants' interpretation of the statute certainly renders nugatory the mandate of subsection 2 regarding how "revenues derived from the tax levy authorized by this section shall be allocated and distributed . . . ." We construe an act as a whole to harmonize its provisions and carry out the purpose of the Legislature. In other words, we must resolve the apparent conflict between the two subsections at issue here in a manner that will give effect to both.[5] *Macomb Co Prosecutor v Murphy*, 464 Mich 149, 159; 627 NW2d 247 (2001). We conclude that this can easily be accomplished because subsection 2 itself provides the manner by which its mandatory allocation and distribution formula can be avoided. That is specifically allowed if "agreed by the governing bodies of the cities and

---

[4] We do not disagree with defendants' argument that using revenues approved by the voters for a specific purpose for some other purpose would be unlawful.

[5] The opening provision of subsection 1, specifying that it applies "[n]otwithstanding any other provision of this act," does nothing to resolve the apparent conflict. Subsection 1 does not address the proper allocation and distribution of revenues raised by a tax levy; it only authorizes the submission of a tax levy question to the voters for approval. Subsection 2 does nothing to diminish the authority granted by subsection 1; it only specifies how levied revenues are to be allocated and distributed without addressing in any manner the submission of a tax levy question for voter approval. The "notwithstanding" provision of subsection 1 apparently refers to other sections of the general highway law that might otherwise prevent submission of a tax levy question to the voters. See, e.g., MCL 224.20 and 224.20a.

villages and the board of county road commissioners . . . ." MCL 224.20b(2). Thus, pursuant to subsection 1, a county board of commissioners may submit a specific highway tax levy to the voters for approval and, if approved, spend the proceeds of the levy for that specific purpose without making the allocations and distributions otherwise required by subsection 2 *if* the board of commissioners has previously secured an agreement to that effect from the governing boards of the cities and villages within the county.

We recognize defendants' argument that this is a cumbersome and difficult procedure for raising and spending money on specific road projects. Nonetheless, we conclude that it is the only approach authorized by the statute, giving all of its subsections effect.[6] We cannot rewrite the statute in light of defendants' policy arguments. *Maier v Gen Tel Co of Michigan*, 247 Mich App 655, 664-665; 637 NW2d 263 (2001).

We reverse the trial court's denial of plaintiff's motion for summary disposition on the issue whether defendants violated the statute. As previously discussed, we also reverse the trial court's determination that the Tax Tribunal has exclusive jurisdiction over this case, and we affirm the determination that the county road commission is not properly a defendant in this action. Although the parties make passing reference to other defenses defendants may have against plaintiff's claim, including waiver, laches, and estoppel, those matters were not addressed by the trial court and are not properly presented for review on appeal. We remand for further proceedings consistent with this

---

[6] We note that this conclusion is consistent with subsection 4 of the statute, which reiterates that a tax levy question shall not be submitted to the electorate unless the revenues raised as a result are allocated and distributed as authorized by the section. MCL 224.20b(4).

opinion. We do not retain jurisdiction. No costs shall be
assessed, public questions having been presented.