**Michigan Supreme Court**
**Lansing, Michigan**

# Opinion

Chief Justice:
Clifford W. Taylor

Justices:
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman

FILED JULY 11, 2007

CITY OF SOUTH HAVEN,

       Plaintiff-Appellee,

v

VAN BUREN COUNTY BOARD OF
COMMISSIONERS and VAN BUREN
COUNTY TREASURER,

       Defendants-Appellants,

and

VAN BUREN COUNTY BOARD OF
COUNTY ROAD COMMISSIONERS,

       Defendant-Appellee.

No. 131011

BEFORE THE ENTIRE BENCH

PER CURIAM.

At issue in this case is whether defendants violated MCL 224.20b by presenting and securing voter approval of a road millage proposal and, if so, what remedy is available. We affirm the Court of Appeals decision that the millage proposal in this case violated the allocation provisions of MCL 224.20b, but

reverse the Court of Appeals order remanding the case because, under the facts presented, plaintiff is not entitled to any of the remedies it seeks.

I

The statute at issue in this case is MCL 224.20b,[1] which permits county boards of commissioners to propose tax levies, also known as millage proposals, for roads and bridges, but requires the proceeds of such a levy to be distributed to cities and villages for their roads, as well as to the county, according to a specific formula unless the governing boards of the cities and villages agree with the county to a different distribution. The statute also expressly states that proposals must conform to this distribution requirement and unless they do, they are not properly before the voters.

---

[1] MCL 224.20b reads:

(1) Notwithstanding any other provision of this act, the board of commissioners of any county by proper resolution may submit to the electorate of the county at any general or special election the question of a tax levy for highway, road and street purposes or for 1 or more specific highway, road or street purposes, including but not limited to bridges, as may be specified by the board.

(2) Unless otherwise agreed by the governing bodies of the cities and villages and the board of county road commissioners the revenues derived from the tax levy authorized by this section shall be allocated and distributed by the county treasurer as follows:

(a) To the county road fund:

(i) A percentage of the total revenues equal to the proportion that the state equalized valuation of the unincorporated area of the county bears to the total state equalized value of the county.

(continued…)

2

Despite this fund distribution requirement, the voters of Van Buren County in 2003 were presented with and approved a road millage that had no provision for distributing funds to cities and villages. It simply gave one mill for five years to the Van Buren County Road Commission to repair and reconstruct county roads,[2]

(…continued)

      (ii)  A percentage of the remainder of the revenues equal to the proportion that the county primary road mileage within cities and villages bears to the total of the city and village major street mileage in the county plus the county primary road mileage within cities and villages in the county. The mileages to be used are the most recent mileages as certified by the state highway commission.

      (b) The remaining revenues shall be distributed to the cities and villages in the proportion that the state equalized valuation of each bears to the total state equalized valuation of the incorporated areas of the county.

      (3) The revenues allocated to the cities and villages shall be expended exclusively for highway, road and street purposes. The revenues allocated to the county road fund shall be expended by the board of county road commissioners exclusively for highway, road and street purposes.

      (4) Notwithstanding the provisions of section 22 of this chapter, section 7 of Act No. 156 of the Public Acts of 1851, as amended, being section 46.7 of the Compiled Laws of 1948, or section 1 of Act No. 28 of the Public Acts of 1911, being section 141.71 of the Compiled Laws of 1948, a board of county commissioners shall not submit to the electorate of the county the question of a tax levy for any highway, road or street purpose, including but not limited to bridges, nor submit the question of borrowing money for any such purpose, to be voted upon at any election held on or after September 1, 1971 unless the revenues or proceeds are allocated and distributed in the same manner as the revenues derived from a tax levy authorized by this section.

[2] The millage proposal read:

(continued…)

with no mention of city or village roads. No city or village objected even though the statutory requirements in MCL 224.20b had not been followed. Moreover, going back to 1978, six other millages with the same flaw—no distribution provision—had been approved in six separate elections, and the funds derived had also been used exclusively by the Van Buren County Road Commission for the purpose of maintaining and repairing primary county roads and local county roads. Because plaintiff city of South Haven had no county roads within its municipal limits, it did not receive any of the funds from the six millages for road building and repair.

However, in 2004, South Haven for the first time objected to the county's failure to allocate to it any of the millage proceeds. It brought a five-count complaint, alleging that the defendants violated MCL 224.20b, and seeking a constructive trust, restitution of plaintiff's portion of the tax levies plus interest and costs, an order of mandamus requiring defendants to remit the money owed to plaintiff, and a declaratory judgment that plaintiff is entitled to its portion of the tax levies in the future.

---

(…continued)
> Shall there be an additional one (1) mill levy in the amount of one (1) dollar per thousand dollars of the state equalized valuation for the property in Van Buren County, for a period of five (5) years, to be used by the Van Buren County Road Commission specifically for the purpose of repair and reconstruction of primary county roads and local county roads of Van Buren County?

Both the city and the road commission moved for summary disposition. The trial court first found that the Michigan Tax Tribunal had exclusive jurisdiction, and therefore granted the road commission's motion under MCR 2.116(C)(4). It nonetheless went on to also find that the road commission was not a proper party because it owed no duty to the city, and that the allocation formula in MCL 224.20b(2) was inapplicable as a matter of law because the ballot language clearly indicated that only the county would get the funds.

The Court of Appeals reversed much of this decision.[3] First, it held that jurisdiction was proper in the circuit court, not the Tax Tribunal, because the case did not involve assessment, valuation, rates, special assessments, allocation, equalization, a refund, or a redetermination of a tax. Second, the Court agreed that the road commission was not a proper party because it played no role in the alleged misallocation of the funds; its role was merely ministerial and thus summary disposition in its favor was proper. Finally, the panel concluded that, contrary to the county's argument that the specificity of the millage proposal eliminated the need to allocate funds to cities and villages, the requirement of subsection 2 to distribute funds to cities and villages could only be avoided if an agreement was formed between the cities and villages and the county road commission in accordance with MCL 224.20b(2). Because there was no such

agreement, the Court of Appeals concluded that the trial court had erred and funds did need to be allocated as provided in the statute.[4]  However, the panel stopped short of ordering restitution, noting that "using revenues approved by the voters for a specific purpose for some other purpose would be unlawful."[5]  Having pointed out the conundrum, the Court of Appeals then remanded to the trial court "for further proceedings consistent with this opinion."[6]

This Court granted leave to appeal, limited to consideration of whether the city was entitled to any of the tax proceeds.  Specifically, we ordered the parties to address whether the ballot proposal violated the statute and, if so, what remedy might be available; and whether the parties by their conduct "otherwise agreed" to a different allocation than that required by statute.[7]

---

(…continued)
[3] *South Haven v Van Buren Co Bd of Comm'rs*, 270 Mich App 233; 715 NW2d 81 (2006).
[4] *Id.* at 242-243.
[5] *Id.* at 245 n 4.
[6] *Id.* at 246-247.
[7] 477 Mich 958 (2006).

II

This case requires us to interpret the language set forth in MCL 224.20b. This Court reviews de novo questions of statutory construction.[8] Unambiguous statutes are enforced as written.[9]

III

MCL 224.20b establishes a mandatory system for the collection and allocation of taxes levied under that statute, unless otherwise agreed to by the relevant cities and villages. MCL 224.20b(1) states:

> Notwithstanding any other provision of this act, the board of commissioners of any county by proper resolution may submit to the electorate of the county at any general or special election the question of a tax levy for highway, road and street purposes or for 1 or more specific highway, road or street purposes, including but not limited to bridges, as may be specified by the board.

This subsection permits the county board to submit for voter approval a millage "for highway, road and street purposes or for 1 or more specific highway, road or street purposes . . . ." MCL 224.20b(2) states:

> Unless otherwise agreed by the governing bodies of the cities and villages and the board of county road commissioners the revenues derived from the tax levy authorized by this section shall be allocated and distributed by the county treasurer as follows . . . .

---

[8] *Fluor Enterprises, Inc v Dep't of Treasury*, 477 Mich 170, 174; 730 NW2d 722 (2007).

[9] *Id*.

7

The statute then specifies a formula for the allocation of funds collected.[10] MCL 224.20b(2) indicates that all funds collected under the statute "*shall* be allocated" according to the delineated formula, "[u]nless otherwise agreed by the governing bodies of the cities and villages . . . ." (Emphasis added.) The term "shall" indicates that the formula for allocating funds is mandatory. Finally, MCL 224.20b(4) emphasizes and underscores the mandatory nature of the allocation formula established in subsection 2:

> [A] board of county commissioners *shall not* submit to the electorate of the county the question of a tax levy for any highway, road or street purpose, including but not limited to bridges, nor submit the question of borrowing money for any such purpose, to be voted upon at any election held on or after September 1, 1971 *unless* the revenues or proceeds are allocated and distributed in the same manner as the revenues derived from a tax levy authorized by this section. [Emphasis added.]

---

[10] MCL 224.20b(2) states that funds must be allocated:

(a) To the county road fund:

(i) A percentage of the total revenues equal to the proportion that the state equalized valuation of the unincorporated area of the county bears to the total state equalized value of the county.

(ii) A percentage of the remainder of the revenues equal to the proportion that the county primary road mileage within cities and villages bears to the total of the city and village major street mileage in the county plus the county primary road mileage within cities and villages in the county. The mileages to be used are the most recent mileages as certified by the state highway commission.

(b) The remaining revenues shall be distributed to the cities and villages in the proportion that the state equalized valuation of each bears to the total state equalized valuation of the incorporated areas of the county.

8

Thus, the statute requires that taxes collected under its auspices must be allocated in conformity with the formula established in MCL 224.20b(2), unless the cities and villages reach an agreement with the board of county road commissioners to allocate the funds in a different manner.

Because defendants never allocated the tax levies received in accordance with the requirements of MCL 224.20b, and no agreement existed between the cities and villages and the board of county road commissioners, defendants violated MCL 224.20b.

Defendants argue that only "general" road millages are subject to allocation and distribution in accordance with the statute. However, MCL 224.20b(1) applies to millages "for highway, road and street purposes and for 1 or more *specific* highway, road or street purposes . . . ." (Emphasis added.) The phrase "for highway, road, and street purposes" indicates that tax levies for "general" highway, road, and street purposes are subject to the requirements of MCL 224.20b. Nothing in the remainder of the statute alters these requirements: subsection 3 says that the proceeds must be used "exclusively for highway, road and street purposes" and subsection 4 reiterates and emphasizes that millage proposals must conform to the allocation formula set forth in subsection 2, without distinguishing between general and specific projects.

Defendants also argue that the term "any" in the phrase "for any highway, road or street purpose" in MCL 224.20b(4) indicates that only tax levies for

9

"general" purposes must follow the statutory requirements. "Any" is defined as "every; all." *Random House Webster's College Dictionary* (1997). Contrary to defendants' argument, the term "any" indicates that every tax millage—whether "general" or "specific"—established under MCL 224.20b must comply with the allocation formula established in that statute.

Accordingly, the language of the statute clearly states that counties must either allocate proceeds in accordance with the formula or get the local governing bodies to agree to a different distribution. "'If the statute's language is clear and unambiguous, we assume that the Legislature intended its plain meaning, and we enforce the statute as written.'"[11] The phrasing of the ballot proposal is irrelevant to these statutory responsibilities and cannot be a vehicle for avoiding their application.

IV

Although defendants violated their statutory duty under MCL 224.20b, at issue in this case is whether the city is entitled to any relief for these statutory violations. In this case, we conclude that the city is not entitled to restitution. "It is well settled that when a statute provides a remedy, a court should enforce the

---

[11] *Parkwood Ltd Dividend Housing Ass'n v State Housing Dev Auth*, 468 Mich 763, 772; 664 NW2d 185 (2003) (citation omitted). Justice Kelly criticizes this opinion for "refus[ing]" to enforce the statute. *Post* at 4. However, as explained *infra*, MCL 224.20b does not permit plaintiff to pursue the remedies sought. Consequently, this Court is not "refusing" to enforce the statute; rather,

(continued…)

legislative remedy rather than one the court prefers."[12] To determine whether a plaintiff may bring a cause of action for a specific remedy, this Court "must determine whether [the Legislature] intended to create such a cause of action."[13] ""'Where a statute gives new rights and prescribes new remedies, such remedies must be strictly pursued; and a party seeking a remedy under the act is confined to the remedy conferred thereby and to that only."'"[14] Accordingly, this Court has previously declined to establish a remedy that the Legislature has not provided.[15]

In this case, MCL 224.20b does not provide a remedy of restitution if a board of county commissioners violates its statutory obligations. The Legislature's decision not to specify such a remedy suggests that the Legislature did not intend to allow plaintiff to seek restitution for a violation of MCL 224.20b. This conclusion is buttressed by MCL 224.30, which states:

---

(…continued)
this Court is enforcing the Legislature's decision to limit the remedies available for a violation of MCL 224.20b.

[12] *Roberts v Mecosta Co Gen Hosp*, 466 Mich 57, 66 n 5; 642 NW2d 663 (2002).

[13] *Office Planning Group, Inc v Baraga-Houghton-Keweenaw Child Dev Bd*, 472 Mich 479, 496; 697 NW2d 871 (2005).

[14] *McClements v Ford Motor Co*, 473 Mich 373, 382; 702 NW2d 166 (2005), quoting *Monroe Beverage Co, Inc v Stroh Brewery Co*, 454 Mich 41, 45; 559 NW2d 297 (1997), quoting *Lafayette Transfer & Storage Co v Pub Utilities Comm*, 287 Mich 488, 491; 283 NW 659 (1939).

[15] See, e.g., *Office Planning Group, supra*; *Jones v Dep't of Corrections*, 468 Mich 646; 664 NW2d 717 (2003); *People v Hawkins*, 468 Mich 488; 668 NW2d 602 (2003).

11

(1) If an audit or investigation conducted under this act discloses statutory violations on the part of an officer, employee, or board of a county road commission, a copy of the report shall be filed with the attorney general who shall review the report and cause to be instituted a proceeding against the officer, employee, or board as the attorney general deems necessary.

\* \* \*

(3) The attorney general or the prosecuting attorney shall institute civil action in a court of competent jurisdiction for the recovery of public moneys disclosed by an examination to have been illegally expended or collected and not accounted for and for the recovery of public property disclosed to have been converted and misappropriated.

MCL 224.30 permits the Attorney General to file suit for a statutory violation of the county road law, and to seek "recovery of public property" that has been "misappropriated." Because the Legislature specifically authorized the Attorney General to bring a civil suit to recover "misappropriated" funds, but did not authorize plaintiff to bring a similar suit, MCL 224.30 indicates that the Legislature did not intend to allow plaintiff to pursue the remedy of restitution. """Courts cannot assume that the Legislature inadvertently omitted from one statute the language that it placed in another statute . . . .""""[16] Rather, plaintiff's statutorily provided remedy is through the Attorney General.

---

[16] *People v Anstey*, 476 Mich 436, 444; 719 NW2d 579 (2006), quoting *People v Monaco*, 474 Mich 48, 58; 710 NW2d 46 (2006), quoting *Farrington v Total Petroleum, Inc*, 442 Mich 201, 210; 501 NW2d 76 (1993). Moreover, other provisions of the county road law allow a plaintiff to bring suit for violations of specific statutes. See MCL 224.21(3) (specifying how a private party may bring a
(continued…)

Because nothing in the statute indicates any legislative intent to allow plaintiff to pursue a claim for restitution of misallocated funds, and the Legislature explicitly granted such authority to the Attorney General alone, [17] plaintiff cannot seek restitution of the misallocated funds in this case. We decline to permit plaintiff to pursue a remedy that the Legislature did not intend to allow because "[t]o do otherwise would be an exercise of *will* rather than *judgment*."[18]

However, although plaintiff may not seek restitution, this Court has permitted a plaintiff to seek injunctive relief when a government official does not conform to his or her statutory duty to distribute funds in a specified manner.[19]

---

(…continued)

suit when a county violates its statutory duties under MCL 224.21[2]); MCL 224.18(13) to (19) (specifying how suit may be brought and what relief is available for a violation of MCL 224.18[12]). These statutes further suggest that the Legislature would have specified that a plaintiff may seek restitution for violations of MCL 224.20b, if the Legislature had intended such a result.

[17] Justice Kelly contends that MCL 224.30 is "inapplicable" because "no audit or investigation revealed any statutory violations," and hence "there was no need for the Attorney General to institute proceedings under MCL 224.30." *Post* at 9. However, Justice Kelly ignores the fact that by granting only the Attorney General the power to seek restitution of a "misappropriation" of funds under the county road law, the Legislature indicated that plaintiff cannot pursue the same remedy. The fact that previous audits may have overlooked any statutory violation is wholly irrelevant. Justice Kelly would also find that the remedy available to plaintiff is "inadequate." *Post* at 9. However, the adequacy of a specified remedy is a judgment for the Legislature, not for this Court.

[18] *People v Stevens (After Remand)*, 460 Mich 626, 645; 597 NW2d 53 (1999) (emphasis in original).

[19] See *Thomson v Dearborn*, 347 Mich 365; 79 NW2d 841 (1956) (permitting a plaintiff to seek an injunction against the misappropriation of funds); see also *City of Jackson v Comm'r of Revenue*, 316 Mich 694, 719; 26 NW2d 569

(continued…)

13

Thus, two possible judicial remedies are available in a case where voters approve a ballot proposal that improperly allocates proceeds: to enjoin collection of the improper millage or to refund collected taxes to the taxpayers. These remedies would be unexceptional exercises of the power of the judiciary to give injunctive relief to prevent illegal acts.[20]

Plaintiff seeks a third possible remedy: a writ of mandamus compelling defendants to disgorge the funds and allocate them in accordance with the statutory formula. This we decline to do because the city is not entitled to receive any of the funds. Under the General Property Tax Act, MCL 211.1 *et seq*., when a millage proposal is submitted to the electors for approval, the ballot must "fully disclose each local unit of government to which the revenue from that millage will be disbursed," and must state "[a] clear statement of the purpose for the millage."[21] This statute does not expressly preclude using for one purpose tax revenue specifically approved for a different purpose. However, a fundamental rule of statutory construction is that the Legislature did not intend to do a useless thing.[22] If funds that voters approved for the purpose stated on the ballot could be

---

(…continued)

(1947) (a provision specifying the distribution of levied funds among units of local government was "self-executing," and therefore could be enforced by mandamus).

[20] See Const 1963, art 6, §§ 1, 4, and 13. In this case, however, the millage has already been collected and the taxpayers are not seeking a refund, so neither of these remedies is appropriate.

[21] MCL 211.24f(1) and (2)(d).

redirected to another purpose without seeking new approval, there would be no reason for including the purpose on the ballot. Indeed, voters could be lulled into voting for a millage for a popular purpose, only to have the funds then used for something they may well have never approved. This is contrary to the General Property Tax Act.[23] The voters of Van Buren County did not approve the allocation of funds for city roads, and perhaps would not have approved a proposal including that purpose. While no court has warrant to violate MCL 224.20b by ordering distribution contrary to that statute, it likewise may not violate MCL 211.24f by ordering these funds to be used for a purpose not approved by the

---

(…continued)

[22] *Girard v Wagenmaker*, 437 Mich 231, 244; 470 NW2d 372 (1991).

[23] See also *Maas v City of Mountain Home*, 338 Ark 202; 992 SW2d 105 (1999) (Where state constitution provided that tax monies levied for one purpose cannot be used for any other purpose, voters were entitled to rely on the ballot title and the levying ordinance that specified an exclusive purpose; the city's unilateral diverting of funds for another use was an illegal exaction.); *Johnstone v Thompson*, 280 Ga 611; 631 SE2d 650 (2006) (Where statute required a special purpose, tax could only be used exclusively for the specified purpose, any other use was prohibited.); *Denham Springs Econ Dev Dist v All Taxpayers*, 894 So 2d 325, 335 (La, 2005) ("The act of presenting a proposition to the voters and the voters' acceptance of same constitutes a covenant which should be respected and upheld."); *Ouachita Parish School Bd v Ouachita Parish Supervisors Ass'n*, 362 So 2d 1138, 1143 (La App, 1978) (Where statute required the purpose of the tax to be stated in the ballot proposal, proceeds could only be expended for the stated purpose.).

voters.[24]  Accordingly, South Haven is not entitled to receive any of the proceeds of the millage.[25]

In addition to seeking restitution, plaintiff has also sought a declaratory judgment that plaintiff is entitled to proceeds from future millages in accordance with MCL 224.20b.  However, no "actual controversy" exists in this case that

---

[24] The case cited by the partial dissent, *Advisory Opinion on Constitutionality of 1986 PA 281*, 430 Mich 93; 422 NW2d 186 (1988), which allows tax increment revenues to be used for purposes other than those approved by voters, does not control here.  This Court expressly limited the holding in that case to the narrow issue it presented.  "The particular facts of a future litigation case, or questions premised upon other constitutional provisions or questions of statutory construction not presented in the request for advisory opinion, may present different problems that are not addressed here." *Id*. at 99.

Moreover, *Advisory Opinion* is distinguishable from the instant case. *Advisory Opinion* addressed solely whether Const 1963, art 9, § 6 required that funds be spent in accordance with the underlying purpose of the applicable levy, and limited its holding to the conclusion that under Const 1963, art 9, § 6, "the Legislature retains the power to allocate tax revenues" because "[Const 1963,] art 9, § 6 does not address the question of 'purpose'; it places a limitation on the tax *rate*, not on tax revenues or their use." *Id*. at 111-112 (emphasis in original). Contrary to the constitutional provision at issue in *Advisory Opinion*, the statutory scheme at issue in this case indicates that funds derived from levies must be used for the purposes stated in the ballot.  Thus, *Advisory Opinion* is distinguishable from the instant case.

[25] Justice Kelly argues that this Court may order the distribution of taxes contrary to the express purpose in a ballot measure, because "regardless of the language in the proposals, the proposals themselves were illegal." *Post* at 5. However, Justice Kelly overlooks the clear import of MCL 211.24f, which indicates that taxes levied pursuant to a millage proposal may not be spent contrary to the express will of the voters.  Although Justice Kelly claims this Court is "sanction[ing]" a violation of MCL 224.20b, *post* at 5, this Court is merely recognizing that the only remedy available to plaintiff is through the Attorney General.  Contrary to her argument, mandamus is not available because that remedy would require a violation of MCL 211.24f.

16

would permit a declaratory judgment in plaintiff's favor.[26] Because plaintiff has not shown that a millage in violation of MCL 224.20b has currently been proposed by defendants, any injury to plaintiff from potential future millages is conjectural or hypothetical, and not actual or imminent.[27] Hence, plaintiff does not have standing to bring a declaratory judgment claim.[28]

V

In conclusion, the ballot proposal approved by the voters violated MCL 224.20b because it did not conform to the statutory requirement to allocate funds according to the specified formula and no agreement existed between the local governing bodies to allocate differently. However, restitution is not available to the city because the Legislature has not permitted plaintiff to bring a claim for restitution and this Court cannot use its judicial power to provide a remedy that would itself violate the law. Moreover, because plaintiff is not threatened by an "actual or imminent" injury, plaintiff does not have standing to bring a claim for a

---

[26] MCR 2.605(A)(1) provides: "In a case of actual controversy within its jurisdiction, a Michigan court of record may declare the rights and other legal relations of an interested party seeking a declaratory judgment, whether or not other relief is or could be sought or granted."

[27] *Associated Builders & Contractors v Dep't of Consumer & Industry Services Director*, 472 Mich 117, 126; 693 NW2d 374 (2005), quoting *Lee v Macomb Co Bd of Comm'rs*, 464 Mich 726, 739; 629 NW2d 900 (2001).

[28] *Nat'l Wildlife Federation v Cleveland Cliffs Iron Co*, 471 Mich 608, 628; 684 NW2d 800 (2004).

declaratory judgment regarding future ballot proposals.[29]  Accordingly, we affirm

in part and reverse in part the judgment of the Court of Appeals.

Clifford W. Taylor
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman

---

[29] Thus, because plaintiff does not seek an available remedy, nothing remains to be litigated on remand.

S T A T E   O F   M I C H I G A N

SUPREME COURT

CITY OF SOUTH HAVEN,

      Plaintiff-Appellee,

v                                           No. 131011

VAN BUREN COUNTY BOARD OF
COMMISSIONERS and VAN BUREN
COUNTY TREASURER,

      Defendants-Appellants,

and

VAN BUREN COUNTY BOARD OF
COUNTY ROAD COMMISSIONERS,

      Defendant-Appellee.

_____

WEAVER, J. (*concurring*).

I concur in the result reached by the majority, affirming in part and reversing in part the judgment of the Court of Appeals. I join in parts I, II, and III of the majority opinion.

Under the facts of this case, I believe that no remedy exists for the plaintiffs because MCL 224.20b does not provide for a remedy and no injunctive relief is available inasmuch as the funds at issue in this case have already been expended. No mandamus is available because the city of South Haven is not entitled to receive any of the proceeds of the millage; no court may violate MCL 224.20b and

order distribution contrary to the statute. Further, no court may violate MCL 211.24f by ordering funds to be used for a purpose not approved by the voters of Van Buren County.

Elizabeth A. Weaver

2

S T A T E  O F  M I C H I G A N

SUPREME COURT

CITY OF SOUTH HAVEN,

       Plaintiff-Appellee,

v

No. 131011

VAN BUREN COUNTY BOARD OF
COMMISSIONERS and VAN BUREN
COUNTY TREASURER,

       Defendants-Appellants,

and

VAN BUREN COUNTY BOARD OF
COUNTY ROAD COMMISSIONERS,

       Defendants.

---

CAVANAGH, J. (*concurring in part and dissenting in part*).

I agree that the ballot proposal violated the allocation provisions of MCL 224.20b; thus, I join parts I, II, and III of the majority opinion. However, I dissent from parts IV and V because I would not reach the issue of the remedies available for a violation of MCL 224.20b when the lower courts have not yet addressed the matter. I would remand to the circuit court to consider whether any of plaintiff's claims survive defendants' motion for summary disposition in light of our ruling.

                                Michael F. Cavanagh

STATE OF MICHIGAN

SUPREME COURT

CITY OF SOUTH HAVEN,

      Plaintiff-Appellee,

v

No. 131011

VAN BUREN COUNTY BOARD OF
COMMISSIONERS and VAN BUREN
COUNTY TREASURER,

      Defendants-Appellants,

and

VAN BUREN COUNTY BOARD OF
COUNTY ROAD COMMISSIONERS,

      Defendant-Appellee.

_____

KELLY, J. (*concurring in part and dissenting in part*).

I agree with the majority that defendants' millage proposals violated MCL 224.20b. However, I disagree that no remedy exists for the violations. I would hold that an equitable remedy is available, affirm the judgment of the Court of Appeals, and remand the case to the trial court for further proceedings.

THE GOVERNING STATUTORY PROVISIONS

I begin, as is appropriate, with the language of the statute. The taxes in this case were levied under the authority of MCL 224.20b. It provides:

(1) Notwithstanding any other provision of this act, the board of commissioners of any county by proper resolution may submit to the electorate of the county at any general or special election the question of a tax levy for highway, road and street purposes or for 1 or more specific highway, road or street purposes, including but not limited to bridges, as may be specified by the board.

(2) Unless otherwise agreed by the governing bodies of the cities and villages and the board of county road commissioners the revenues derived from the tax levy authorized by this section shall be allocated and distributed by the county treasurer as follows:

(a) To the county road fund:

(i) A percentage of the total revenues equal to the proportion that the state equalized valuation of the unincorporated area of the county bears to the total state equalized value of the county.

(ii) A percentage of the remainder of the revenues equal to the proportion that the county primary road mileage within cities and villages bears to the total of the city and village major street mileage in the county plus the county primary road mileage within cities and villages in the county. The mileages to be used are the most recent mileages as certified by the state highway commission.

(b) The remaining revenues shall be distributed to the cities and villages in the proportion that the state equalized valuation of each bears to the total state equalized valuation of the incorporated areas of the county.

(3) The revenues allocated to the cities and villages shall be expended exclusively for highway, road and street purposes. The revenues allocated to the county road fund shall be expended by the board of county road commissioners exclusively for highway, road and street purposes.

(4) Notwithstanding the provisions of section 22 of this chapter, section 7 of Act No. 156 of the Public Acts of 1851, as amended, being section 46.7 of the Compiled Laws of 1948, or section 1 of Act No. 28 of the Public Acts of 1911, being section 141.71 of the Compiled Laws of 1948, a board of county commissioners shall not submit to the electorate of the county the

2

question of a tax levy for any highway, road or street purpose, including but not limited to bridges, nor submit the question of borrowing money for any such purpose, to be voted upon at any election held on or after September 1, 1971 unless the revenues or proceeds are allocated and distributed in the same manner as the revenues derived from a tax levy authorized by this section.

Pursuant to subsection 1, the board of county commissioners can submit to the electorate a tax levy for either a specific or a general purpose. MCL 224.20b(1). The monies raised from the levy must be allocated in accordance with the formula set forth in subsection 2. MCL 224.20b(2).[1] There is no dispute that plaintiff, the city of South Haven, is a municipality for purposes of subsection 2. Hence, plaintiff was entitled to a portion of the proceeds from each of the ballot proposals.

However, without dispute, plaintiff did not receive any of the revenues generated. They were all to be used for maintaining and repairing primary and local county roads.[2] Presumably because no county roads existed within plaintiff's city limits, plaintiff did not receive any of the revenues.

---

[1] The allocation set forth in subsection 2 is applicable unless there is an agreement to the contrary among the governing bodies of the county's municipalities and the board of county road commissioners. In the instant case, there was never an agreement.

[2] The 2003 ballot proposal stated:

Shall there be an additional one (1) mill levy in the amount of one (1) dollar per thousand dollars of the state equalized valuation for the property in Van Buren County, for a period of five (5) years, to be used by the Van Buren County Road Commission specifically

(continued…)

3

Yet, the statutory language is unambiguous. This Court has repeatedly stated that it will enforce unambiguous statutes as written.[3] Therefore, this Court should enforce the statute and remand the case to the trial court for a determination of what portion of the revenues should have been distributed to plaintiff.

But the majority refuses to do so, even though it (1) notes that the term "shall," as used in the statute, indicates that the formula for allocating funds is mandatory, (2) states that "[t]he phrasing of the ballot proposal is irrelevant to these statutory responsibilities and cannot be a vehicle for avoiding their application," and (3) states that "'"[i]f the statute's language is clear and unambiguous, we assume that the Legislature intended its plain meaning, and we

---

(…continued)
> for the purpose and repair and reconstruction of primary county roads and local county roads of Van Buren County?

Similar ballot proposals appeared in 1978, 1980, 1984, 1988, 1994, and 1998. The amounts and the renewal periods varied.

[3] One need look no further than the instant court term to observe that this Court has repeatedly stated that it will enforce unambiguous statutes as written. See, e.g., *Fluor Enterprises, Inc v Dep't of Treasury*, 477 Mich 170, 174; 730 NW2d 722 (2007) ("'If the statute is unambiguous it must be enforced as written.'") (citation omitted); *Rowland v Washtenaw Co Rd Comm*, 477 Mich 197, 202; 731 NW2d 41 (2007) ("When the language is unambiguous, we give the words their plain meaning and apply the statute as written."); *Apsey v Mem Hosp*, 477 Mich 120, 127; 730 NW2d 695 (2007) ("To accomplish this task, we start by reviewing the text of the statute, and, if it is unambiguous, we will enforce the statute as written because the Legislature is presumed to have intended the meaning expressed."); *Haynes v Neshewat*, 477 Mich 29, 35; 729 NW2d 488 (2007) ("If the statute is unambiguous, this Court will apply its language as written."); *Saffian v Simmons*, 477 Mich 8, 12; 727 NW2d 132 (2007) ("'If the statute is unambiguous it must be enforced as written.'") (citation omitted).

4

enforce the statute as written.""" *Ante* at 10, quoting *Parkwood Ltd Housing Ass'n v State Housing Dev Auth,* 468 Mich 763, 772; 664 NW2d 185 (2003).

THE EFFECT OF THE LANGUAGE OF THE MILLAGE PROPOSALS

The majority sanctions defendants' unlawful diversion of funds by noting that the General Property Tax Act (GPTA), MCL 211.1 *et seq*., requires that a ballot proposal "fully disclose each local unit of government to which the revenue from that millage will be disbursed,"[4] and make "[a] clear statement of the purpose for the millage."[5] See *ante* at 14. The majority essentially concludes that, because the ballot proposals satisfied the GPTA, described how revenues would be distributed, and stated why the millages were being levied, the proposals trumped MCL 224.20b. I disagree.

First, as noted earlier, this Court applies unambiguous statutes as written. The Legislature provided unambiguously in MCL 224.20b the method of distribution. Second, even if the ballot proposals satisfied MCL 211.24f, they violated MCL 224.20b. Therefore, regardless of the language in the proposals, the proposals themselves were illegal. Third, as the majority acknowledges, MCL 211.24f does not preclude using tax revenues generated by a ballot proposal for purposes other than the purpose stated in the proposal. This is especially

---

[4] MCL 211.24f(1).

[5] MCL 211.24f(2)(d).

5

significant in situations such as the instant case, in which the ballot proposals were illegal.

This Court acknowledged in 1988 that the Legislature has the power to determine how tax revenues may be spent. In *Advisory Opinion on Constitutionality of 1986 PA 281*,[6] this Court addressed the constitutionality of certain provisions of 1986 PA 281, MCL 125.2151 *et seq.*, entitled the Local Development Financing Act. One of the questions presented was whether the capture and use of tax increment revenues by a local development finance authority violated the state constitution at Const 1963, art 9, § 6. *Advisory Opinion on Constitutionality of 1986 PA 281*, 430 Mich 93, 97; 422 NW2d 186 (1988).

Amici curiae argued that, once the voters adopt an extra millage proposition for school funding purposes, any diversion of that millage to a local development funding authority violates the constitution. *Id.* at 108. This Court rejected that argument and concluded that article 9, § 6 of the constitution did not govern the capture and use of tax increment revenues. *Id.* at 107, 111. This Court further noted that "'in exercising the powers of the state the legislature may require the revenue of a municipality, raised by taxation, to be applied to uses other than that

---

[6] 430 Mich 93; 422 NW2d 186 (1988).

6

for which the taxes were levied.'" *Id.* at 113, quoting *Tribe v Salt Lake City Corp*, 540 P2d 499, 504 (Utah, 1975).[7]

In keeping with the reasoning of *Advisory Opinion on Constitutionality of 1986 PA 281,* the Legislature may apply tax revenues for purposes other than those for which the people intended them. By contrast, no persuasive authority exists for the proposition that defendants here, through an illegal ballot proposal, could distribute the taxes raised contrary to the manner specified in a governing statute.

## THE AVAILABILITY OF A REMEDY

Moreover, the majority is incorrect in concluding that the only remedies available to plaintiff were to enjoin collection of the millages or to compel refund of the monies to the taxpayers. Neither the trial court nor the Court of Appeals discussed whether any remedies or corresponding defenses were available. The question should be resolved first by the trial court on remand. However, I believe that equitable remedies are available, subject to any defense a defendant might have.

---

[7] The majority contends that *Advisory Opinion on Constitutionality of 1986 PA 281* does not control here because this Court limited the holding in that case to the issues presented. The majority is correct that *Advisory Opinion on Constitutionality of 1986 PA 281* is not binding authority. Nonetheless, it is persuasive and indicates this Court's willingness to abide by a distribution formula set forth by the Legislature, as opposed to that contained in an illegal ballot proposal.

7

As an initial matter, the majority concludes that, because the Legislature did not expressly provide for a private cause of action, plaintiff cannot seek restitution for a violation of MCL 224.20b. It supports this conclusion by citing MCL 224.30, which states:

> (1) If an audit or investigation conducted under this act discloses statutory violations on the part of an officer, employee, or board of a county road commission, a copy of the report shall be filed with the attorney general who shall review the report and cause to be instituted a proceeding against the officer, employee, or board as the attorney general deems necessary.
>
> * * *
>
> (3) The attorney general or the prosecuting attorney shall institute civil action in a court of competent jurisdiction for the recovery of public moneys disclosed by an examination to have been illegally expended or collected and not accounted for and for the recovery of public property disclosed to have been converted and misappropriated.

However, not only is MCL 224.30 inapplicable to the instant case, it provides an inadequate remedy to a city in plaintiff's position.

The procedure for an audit referred to in MCL 224.30(1) is set forth in MCL 224.26: "Every county road commission in counties of more than 50,000 population shall have an annual audit of its financial records, accounts, and procedures, including those required by law governing the disposition of any state funding." MCL 224.26(1).[8]

---

[8] MCL 224.26(2) provides that in counties with a population of less than 50,000, the audit shall be required not less frequently than biennially. The county

(continued…)

8

In this case, it is presumed that, in accordance with MCL 224.26, the county road commission had an audit performed every year or every other year since 1976. However, no audit or investigation revealed any statutory violations. Because there were no reported violations, there was no need for the Attorney General to institute proceedings under MCL 224.30.[9] Therefore, not only is MCL 224.30 inapplicable in the instant case, it provides an inadequate remedy to plaintiff, as shown by the fact that no investigation was ever commenced.

The majority concludes that plaintiff's sole statutory remedy is through the Attorney General. It also concedes that plaintiff may enjoin collection of the improper millage or seek a refund of the collected taxes. See *ante* at 14. However, I believe that other remedies are available.

For example, in its complaint, plaintiff asked for relief in the form of an order of mandamus.[10] The wrong for which plaintiff seeks a remedy is a statutory

---

(…continued)
road commission must have a certified public accountant perform the audit. MCL 224.27. If the county road commission fails to have the audit done, the Department of Treasury must have it done. *Id.*

[9] In fact, before the instant proceedings commenced, plaintiff informed defendant county treasurer that the funds collected by the millages were not being distributed as required by MCL 224.20b. Rather than commencing an investigation, defendants dismissed plaintiff's request for an accounting.

[10] As this Court noted in *State Bd of Ed v Houghton Schools*, 430 Mich 658, 666-667; 425 NW2d 80 (1988):

> [T]o obtain a writ of mandamus, the plaintiff must have a clear legal right to the performance of the specific duty sought to be

(continued…)

violation, and in the past our courts have granted mandamus relief for statutory violations. In *City of Belding v Ionia Co Treasurer*, a statute required the county treasurer to apportion penal fines to libraries. *City of Belding v Ionia Co Treasurer,* 360 Mich 336, 343; 103 NW2d 621 (1960). This Court ordered the treasurer to comply with the statute. We recognized that "[a] clear legal duty reposes on the county treasurer in this regard, and a clear legal right is plaintiff's to receive the apportionment from him." *Id.* at 344. The plaintiff's action was properly brought against the treasurer, and the treasurer was required by mandamus to apportion the funds as the statute required. *Id.*

Similarly, in *Grand Rapids Pub Schools v Grand Rapids*,[11] the Court of Appeals recognized that, if required to do so by statute, the county treasurer had to properly distribute earned interest. The Court of Appeals noted that a city or county treasurer is a fiduciary in the management and application of public funds. *Id.* at 657.

---

(…continued)
> compelled and the defendants must have a clear legal duty to perform the same. *Pillon v Attorney General*, 345 Mich 536, 539; 77 NW2d 257 (1956); *Janigian v Dearborn*, 336 Mich 261, 264; 57 NW2d 876 (1953). . . . The primary purpose of the writ of mandamus is to enforce duties created by law, *Kosiba v Wayne Co Bd of Auditors*, 320 Mich 322, 326; 31 NW2d 68 (1948), where the law has established no specific remedy and where, in justice and good government, there should be one. *Lenz v Detroit Mayor*, 338 Mich 383, 395; 61 NW2d 587 (1953).

[11] 146 Mich App 652; 381 NW2d 783 (1985).

In this case, defendant county treasurer had a statutory duty to distribute the millage revenue as set forth in MCL 224.20b(2) because there was no agreement to the contrary. It is undisputed that the treasurer neglected to do so, distributing nothing to plaintiff. Hence, the treasurer violated her statutory duty, and, as a consequence, plaintiff was denied its statutory right to receive the funds. If the trial court were to deterimine that plaintiff is entitled to relief in this case, it could issue an order of mandamus.[12]

CONCLUSION

I agree with the majority that the millage proposals under consideration in this case violated MCL 224.20b. However, I disagree that no remedy exists for the violations. I also disagree that the millage revenues were properly distributed when, although they were spent in accordance with the millage proposals, they were distributed in violation of the statute. Accordingly, I would remand this matter to the trial court with directions that it set aside its denial of plaintiff's motion for summary disposition and proceed with the case.

Marilyn Kelly

---

[12] The majority disagrees that an order of mandamus is available, because the ballots complied with MCL 211.24f. However, for the reasons stated, I disagree with the majority that compliance with MCL 211.24f in any way diminishes the violation of MCL 224.20b.

11