*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

STEVEN R. GENTRY,

       Plaintiff-Appellant,

v

CHARTER TOWNSHIP OF CLINTON,

       Defendant-Appellee.

UNPUBLISHED
March 30, 2023

No. 360116
Macomb Circuit Court
LC No. 2021-002813-CZ

Before: CAVANAGH, P.J., and MARKEY and BORRELLO, JJ.

PER CURIAM.

In this action generally challenging the Charter Township of Clinton's use of specific property tax revenue, plaintiff appeals as of right the circuit court's order granting the township's motion for summary disposition based on a determination that the Michigan Tax Tribunal had exclusive subject-matter jurisdiction over the case pursuant to MCL 205.731(b) and MCL 205.774. The trial court further concluded that even if it had subject-matter jurisdiction, plaintiff's case should still be dismissed because plaintiff lacked taxpayer standing and plaintiff's action was untimely under *Bigger v City of Pontiac*, 390 Mich 1; 210 NW2d 1 (1973). For the reasons set forth in this opinion, we affirm the trial court's decision granting summary disposition in favor of the township because plaintiff lacked standing to bring this action.

## I. BACKGROUND

Plaintiff initiated this purported class-action lawsuit on August 2, 2021, generally challenging the propriety of the township's use of revenue collected from a property tax millage that was approved by voters pursuant to a ballot initiative. Plaintiff alleged that in 2013, township voters had approved a millage for the purpose of purchasing additional police vehicles and covering operating costs of the police department, that this millage had been renewed by township voters in 2018 to continue through 2025, and that the township had not used the "vast majority" of the revenue collected from this millage for its intended purpose. As an owner of real property in the township, plaintiff claimed to have paid the property tax at issue.

Specifically, in his first amended complaint, plaintiff alleged that "the Township has simply hoarded millions of dollars raised by the Supplemental Police Tax and/or used those

-1-

revenues to make payments to reduce its actuarily-accrued liability for retiree health care expenses—expenses that are not 'operational costs.' " Plaintiff further alleged that the "Township increased the amount of money in its Police Fund from an already-excessive $21 million to over $36 million since the Supplemental Police Tax was first imposed, even after paying the improper nonoperational expenses." Plaintiff asserted claims for assumpsit, unjust enrichment, and injunctive relief. Based on these claims, plaintiff sought a refund to the class members of the tax allegedly unlawfully collected during the previous six years and plaintiff sought to enjoin the township from further collecting the millage.

The township moved for summary disposition under MCR 2.116(C)(4), (C)(5), (C)(7), and (C)(8). The township argued, as relevant to this appeal, that only the tax tribunal had jurisdiction over the type of claims raised by plaintiff, that plaintiff did not have standing to bring these claims because he had only alleged harm of the type experienced by all taxpayers generally, and that plaintiff's claims were untimely under *Bigger*.

In opposition, plaintiff argued that his action was supported by *South Haven v Van Buren Co Bd of Comm'rs*, 478 Mich 518; 734 NW2d 533 (2007), and that taxpayers have a cause of action for a refund where a municipality uses revenues from a voter approved millage for purposes other than those stated on the ballot. Plaintiff maintained that the circuit court had jurisdiction over the matter, rather than the tax tribunal, because plaintiff was only challenging the township's use of the tax proceeds, and plaintiff was not challenging the amount or validity of an assessment or seeking the type of refund under the state's property tax laws that would bring the matter within the tax tribunal's jurisdiction. Plaintiff also argued that he had standing because he had a direct cause of action under *South Haven*, thus negating the need to rely on concepts of taxpayer standing, and he nonetheless suffered a special injury by personally paying the tax at issue. Finally, as relevant to this appeal, plaintiff argued that *Bigger* did not apply to this case.

The trial court subsequently issued a written opinion and order, thoroughly analyzing the issues and explaining its reasoning for determining that the township was entitled to summary disposition. First, although the trial court concluded that the tax tribunal did not have jurisdiction under MCL 205.731(a), the trial court nevertheless granted the township's motion for summary disposition under MCR 2.116(C)(4) for lack of subject-matter jurisdiction, because it determined that the tax tribunal had exclusive subject-matter jurisdiction over plaintiff's claims under MCL 205.731(b) and MCL 205.774. The trial court reasoned that plaintiff was seeking a refund of taxes, which brought his action within the scope of MCL 205.731(b) and MCL 205.774, and that plaintiff had not explained how his equitable claims constituted extraordinary circumstances that warranted divesting the tax tribunal of jurisdiction. Additionally, the trial court concluded that even if it had subject-matter jurisdiction, plaintiff did not have standing to pursue his claims because he had not satisfied the requirements of demonstrating taxpayer standing. The court also determined that plaintiff's claims were barred under *Bigger*.

Plaintiff now appeals.

## II. SUBJECT-MATTER JURISDICTION

Plaintiff first argues that the trial court erred by determining that the tax tribunal had exclusive subject-matter jurisdiction over plaintiff's claims.

## A. STANDARD OF REVIEW

This Court "review[s] de novo a trial court's decision to grant or deny a motion for summary disposition." *Winkler v Marist Fathers of Detroit, Inc*, 500 Mich 327, 333; 901 NW2d 566 (2017). The question whether a court has subject-matter jurisdiction presents an issue of law that this Court reviews de novo. *Hillsdale Co Senior Servs., Inc v Hillsdale Co*, 494 Mich 46, 51; 832 NW2d 728 (2013). This Court also reviews de novo issues of statutory interpretation. *Id*.

Summary disposition may be granted under MCR 2.116(C)(4) if the "court lacks jurisdiction of the subject matter."

> In reviewing a motion under MCR 2.116(C)(4), it is proper to consider the pleadings and any affidavits or other documentary evidence submitted by the parties to determine if there is a genuine issue of material fact. Jurisdictional questions are reviewed de novo, but this Court must determine whether the affidavits, together with the pleadings, depositions, admissions, and documentary evidence, demonstrate . . . [a lack of] subject matter jurisdiction. [*Forest Hills Coop v Ann Arbor*, 305 Mich App 572, 617; 854 NW2d 172 (2014) (quotation marks and citations omitted; ellipsis and alteration in original).]

## B. ANALYSIS

The first issue presented by plaintiff appeal concerns whether the circuit court or tax tribunal had subject-matter jurisdiction over plaintiff's claims. "Subject-matter jurisdiction refers to a court's power to act and authority to hear and determine a case." *Id*. The question of subject-matter jurisdiction concerns "a court or tribunal's abstract power to try a case of the kind or character of the one pending." *New Covert Generating Co, LLC v Twp of Covert*, 334 Mich App 24, 48; 964 NW2d 378 (2020). As our Supreme Court has explained,

> [j]urisdiction over the subject-matter is the right of the court to exercise judicial power over that class of cases; not the particular case before it, but rather the abstract power to try a case of the kind or character of the one pending; and not whether the particular case is one that presents a cause of action, or under the particular facts is triable before the court in which it is pending, because of some inherent facts which exist and may be developed during the trial. [*Winkler*, 500 Mich at 333-334 (quotation marks and citation omitted; alteration in original).]

Furthermore, the "question of jurisdiction is not dependent on the truth or falsity of the allegations, but upon their nature." *Petersen Fin LLC v Kentwood*, 326 Mich App 433, 441-442; 928 NW2d 245 (2018). "The inquiry into subject-matter jurisdiction is determinable at the commencement of a case, not its conclusion." *Id*. at 442. "A court's subject-matter jurisdiction is determined only by reference to the allegations listed in the complaint." *Id*. at 446 (quotation marks and citation omitted).

Regarding the circuit court's jurisdiction, the Michigan Constitution provides:

> The circuit court shall have original jurisdiction in all matters not prohibited by law; appellate jurisdiction from all inferior courts and tribunals except as

otherwise provided by law; power to issue, hear and determine prerogative and remedial writs; supervisory and general control over inferior courts and tribunals within their respective jurisdictions in accordance with rules of the supreme court; and jurisdiction of other cases and matters as provided by rules of the supreme court. [Const 1963, art 6, § 13.]

Additionally, under MCL 600.605, "[c]ircuit courts have original jurisdiction to hear and determine all civil claims and remedies, except where exclusive jurisdiction is given in the constitution or by statute to some other court or where the circuit courts are denied jurisdiction by the constitution or statutes of this state." "Divestiture of jurisdiction cannot be accomplished except under clear mandate of law." *Romulus City Treasurer v Wayne Co Drain Comm'r*, 413 Mich 728, 738; 322 NW2d 152 (1982). Circuit courts "are courts of general jurisdiction" and when construing relevant statutory and constitutional provisions implicating the potential divestiture of the circuit court's jurisdiction, there is a presumption that the circuit court retains jurisdiction and "any intent to divest the circuit court of jurisdiction must be clearly and unambiguously stated." *Winkler*, 500 Mich at 334 (quotation marks and citation omitted).

At issue in this case is MCL 205.731, in which the Legislature granted original and exclusive subject-matter jurisdiction to the tax tribunal over certain types of proceedings. See also *New Covert*, 334 Mich App at 48. MCL 205.731 provides in relevant part as follows:

The tribunal has exclusive and original jurisdiction over all of the following:

(a) A proceeding for direct review of a final decision, finding, ruling, determination, or order of an agency relating to assessment, valuation, rates, special assessments, allocation, or equalization, under the property tax laws of this state.

(b) A proceeding for a refund or redetermination of a tax levied under the property tax laws of this state.

* * *

(e) Any other proceeding provided by law.

Our Supreme Court has characterized MCL 205.731 as an "exception" to the circuit court's jurisdiction for tax cases. *Hillsdale Co*, 494 Mich at 52. MCL 205.731 is located within the Tax Tribunal Act, MCL 205.701 *et seq*. As used in this act, "tribunal" means "the tax tribunal created under section 21." MCL 205.703(g). "Agency" means "a board, official, or administrative agency empowered to make a decision, finding, ruling, assessment, determination, or order that is subject to review under the jurisdiction of the tribunal or that has collected a tax for which a refund is claimed." MCL 205.703(a). Pursuant to MCL 205.774, the "right to sue any agency for refund of any taxes other than by proceedings before the tribunal is abolished as of September 30, 1974[,]" and "[i]f a tax paid to an agency is erroneous or unlawful, it shall not be requisite that the payment be made under protest in order to invoke a right to refund by proceedings before the tribunal." "The tribunal's jurisdiction is based either on the subject matter of the proceeding (*e.g.*, a direct review of a final decision of an agency relating to special assessments[, assessments, valuation, rates, allocation, or equalization] under property tax laws) or the type of relief requested (*i.e.*, a

-4-

refund or redetermination of a tax under the property tax laws)." *Wikman v City of Novi*, 413 Mich 617, 631; 322 NW2d 103 (1982).

Here, the trial court concluded that it did not have subject-matter jurisdiction because the tax tribunal had exclusive subject-matter jurisdiction over plaintiff's claims pursuant to MCL 205.731(b) and MCL 205.774. In arguing to the contrary, plaintiff relies primarily on our Supreme Court's decision in *South Haven*, 478 Mich 518. Plaintiff contends that *South Haven* supports his argument that he may seek a refund under the circuit court's general equitable powers without invoking the exclusive jurisdiction of the tax tribunal under MCL 205.731(b). Plaintiff also relies on our Supreme Court's decision in *Romulus*, 413 Mich 728, to argue that the circuit court had subject-matter jurisdiction over this matter because the type of refund plaintiff seeks is not the type of typical tax refund contemplated by MCL 205.731(b). Therefore, plaintiff argues under *South Haven* and *Romulus*, tax revenues from a millage may be returned to taxpayers when the funds were spent for a purpose not provided for by the millage. Consequently, plaintiff contends that the relief he is seeking is not a refund under the state's property tax laws (as contemplated by MCL 205.731(b)) but is instead an entirely different cause of action that is rooted in the Supreme Court's *South Haven* decision and based on a challenge to the use of tax revenue from a voter-approved millage.

In *South Haven*, 478 Mich at 521-522, the Supreme Court was presented with an issue involving a statute that required funds from a road millage to be distributed according to a specific formula between cities, villages, and the county for their roads. Voters in the county approved a road millage that only provided revenue to the county and did not contain a provision for the statutorily required distributions to cities and villages. *Id*. at 522-523. The city of South Haven, which did not have any county roads within its boundaries, subsequently objected to the county's failure to allocate any of the millage funds to the city and initiated a lawsuit in the circuit court. *Id*. at 523. The circuit court dismissed the action on summary disposition pursuant to MCR 2.116(C)(4), concluding that the tax tribunal had exclusive jurisdiction of the matter. *Id*. The Court of Appeals reversed and held that jurisdiction was proper in the circuit court rather than the tax tribunal "because the case did not involve assessment, valuation, rates, special assessments, allocation, equalization, a refund, or a redetermination of a tax." *Id*. at 524.

On appeal to our Supreme Court, our Supreme Court determined that the statutory distribution procedure was violated, and the Court proceeded to address whether there was a remedy available to the city. *Id*. at 527-528. After first determining that the statute did not authorize a cause of action for restitution of misallocated funds, *id*. at 530-531, the Court stated that

> although plaintiff may not seek restitution, this Court has permitted a plaintiff to seek injunctive relief when a government official does not conform to his or her statutory duty to distribute funds in a specified manner. Thus, two possible judicial remedies are available in a case where voters approve a ballot proposal that improperly allocates proceeds: to enjoin collection of the improper millage or to refund collected taxes to the taxpayers. These remedies would be unexceptional exercises of the power of the judiciary to give injunctive relief to prevent illegal acts. [*Id*. at 531 (citations omitted).]

The Supreme Court noted that "neither of these remedies [were] appropriate" in that case because "the millage ha[d] already been collected and the taxpayers were not seeking a refund[.]" *Id.* at 531 n 20. The Court then concluded:

> Plaintiff seeks a third possible remedy: a writ of mandamus compelling defendants to disgorge the funds and allocate them in accordance with the statutory formula. This we decline to do because the city is not entitled to receive any of the funds. Under the General Property Tax Act, . . . when a millage proposal is submitted to the electors for approval, the ballot must "fully disclose each local unit of government to which the revenue from that millage will be disbursed," and must state "[a] clear statement of the purpose for the millage." This statute does not expressly preclude using for one purpose tax revenue specifically approved for a different purpose. However, a fundamental rule of statutory construction is that the Legislature did not intend to do a useless thing. If funds that voters approved for the purpose stated on the ballot could be redirected to another purpose without seeking new approval, there would be no reason for including the purpose on the ballot. Indeed, voters could be lulled into voting for a millage for a popular purpose, only to have the funds then used for something they may well have never approved. This is contrary to the General Property Tax Act. The voters of Van Buren County did not approve the allocation of funds for city roads, and perhaps would not have approved a proposal including that purpose. While no court has warrant to violate MCL 224.20b by ordering distribution contrary to that statute, it likewise may not violate MCL 211.24f by ordering these funds to be used for a purpose not approved by the voters. Accordingly, South Haven is not entitled to receive any of the proceeds of the millage. [*Id.* at 531-533 (citations omitted; alteration in original).]

In reaching this result, the Court additionally noted that the Legislature had authorized the Attorney General, by statute,[1] to pursue a civil action to recover misappropriated funds and that the city's "statutorily provided remedy [was] through the Attorney General." *Id.* at 530.

In *Romulus*, 413 Mich at 733-735, the plaintiffs brought an action in the circuit court challenging their drain taxes on the ground that the defendants allegedly committed a constructive fraud by using money collected through special assessments to pay for administrative expenses instead of properly using the special assessment revenue for its enumerated purposes and only relying on general taxation funds to pay administrative expenses. The plaintiffs included "township and city treasurers, acting in their official capacities, and landowners." *Id.* at 733. Our Supreme Court addressed the scope of the tax tribunal's jurisdiction and whether plaintiffs' constructive fraud claim was within the exclusive jurisdiction of the tax tribunal or whether it could properly be considered by the circuit court. *Id.* at 735-736.

In analyzing this issue, the *Romulus* Court noted that the "focus" of the plaintiffs' claim "concern[ed] not the factual underpinnings of the pertinent assessments, but rather how funds

---

[1] The Court cited MCL 224.30, which is specific to violations of certain laws regarding roads. See MCL 224.30; *South Haven*, 478 Mich at 530. Accordingly, this statute has no bearing on the instant case.

collected pursuant to the special assessment laws may be spent." *Id*. at 736. The Court explained that the matters within the tax tribunal's jurisdiction under MCL 205.731 "most clearly relate to the basis for a tax, and much less clearly to the proper uses which may be made of the funds once collected." *Id*. at 738. Our Supreme Court concluded that the plaintiffs' claim was not within the tax tribunal's exclusive jurisdiction under MCL 205.731(a) because questions regarding how the funds collected from the special assessments may properly be expended are not implicated by disputes concerning any of the matters described in subsection (a).[2] *Id*. at 738-739. The Court reasoned as follows:

> Because questions as to the lawful expenditure of funds do not arise within the other matters within the tribunal's jurisdiction, and because the tribunal's expertise relates much more directly to other questions concerning the lawfulness of challenged special assessments, we cannot assume that the Legislature intended to divest the circuit court of its equitable jurisdiction to grant declaratory and injunctive relief in matters involving the appropriate use of funds collected under the guise of special assessment laws. [*Romulus*, 413 Mich at 738-739.]

However, the plaintiffs' claim included a request for the return to the landowner plaintiffs of money, which was being held in escrow, that had been collected as special assessments and also earmarked for administrative expenses. *Id*. at 733-734. Thus, the Court stated that the question remained whether pursuant to MCL 205.731(b) and MCL 205.774, the landowner plaintiffs' request for a return of the money in escrow was a matter within the tax tribunal's exclusive jurisdiction such that the circuit court was precluded from considering the claim or whether the landowner plaintiffs' request could be considered under the circuit court's equity jurisdiction. *Id*. at 732-733, 736, 739, 745-746. The Court held that the matter was, "at least in part, an equitable action, not within the Tax Tribunal's exclusive jurisdiction, and thus properly brought in the circuit court." *Id*. at 732-733. Explaining its holding, the Court reasoned as follows:

> We conclude that, if the funds in escrow have been justifiably withheld from the county, the landowner plaintiffs' claim that the funds should be repaid to them because of defendants' constructive fraud is not a claim for a tax refund within the exclusive jurisdiction of the Tax Tribunal.
>
> We do not reach this conclusion by holding that equity jurisdiction supersedes the Legislature's intended jurisdiction of the Tax Tribunal. Rather, we believe that the Legislature has not shown a clear intent to abolish the circuit court's equity jurisdiction to consider the plaintiffs' claim to the funds in escrow. In accordance with the settled principle that the divestiture of jurisdiction cannot be accomplished except under clear mandate of law, we will not presume an intent not clearly expressed. Although it is arguable that MCL 205.731(b) and MCL 205.774 could apply because the funds in escrow were collected as purported special assessments, a return of the funds from this escrow account would not be a typical tax refund and to treat it as such would likely lead to an anomalous result. If the

---

[2] As previously stated, these matters are "assessment, valuation, rates, special assessments, allocation, or equalization, under the property tax laws of this state." MCL 205.731(a).

circuit court determines that the funds in escrow were properly withheld from the county, then principles of equity may dictate that the funds should be returned to those who paid them. If so, the court would be in an intractable position if such relief were deemed to be a tax refund over which the circuit court had no jurisdiction. Rather, the rule that equity will grant complete relief is applicable here. The Tax Tribunal Act does not prevent a court of equity from determining what should be done with funds that in extraordinary circumstances have been properly withheld from the county. [*Id*. at 746-747 (some citations omitted).]

Here, plaintiff's claims focus on allegations that the township improperly used tax revenue for purposes other than those for which that specific tax revenue was intended. Our Supreme Court's decision in *South Haven* supports the general proposition that revenue generated from a voter-approved millage may not be spent for purposes other than those approved by the voters without contravening the General Property Tax Act.[3] *South Haven*, 478 Mich at 531-533. Because plaintiff's challenge in the instant case relates to how the millage revenue could lawfully be spent after being collected rather than the underlying basis for the tax, plaintiff's claims do not implicate the special expertise of the tax tribunal and therefore do not fall within the tax tribunal's exclusive jurisdiction under MCL 205.731(a). *Romulus*, 413 Mich at 736, 738-739. Accordingly, the trial court did not err by determining that the tax tribunal did not have exclusive subject-matter jurisdiction under MCL 205.731(a).

However, the question remains whether plaintiff's claims are within the exclusive subject-matter jurisdiction of the tax tribunal under MCL 205.731(b) because plaintiff seeks a "refund." Answering this question also implicates MCL 205.774, which generally prohibits lawsuits for tax refunds "other than by proceedings before the tribunal." In his first amended complaint, plaintiff specifically sought to have the township refund the money collected pursuant to the millage. The tax tribunal's jurisdiction under MCL 205.731(b) is based on the type of relief requested. *Wikman*, 413 Mich at 631. The issue thus becomes whether plaintiff's requested relief actually constitutes "a refund . . . of a tax levied under the property tax laws of this state," for purposes of MCL 205.731(b),[4] or a "refund of any taxes," for purposes of MCL 205.774, such that jurisdiction in the circuit court is precluded.

The answer to this question is not entirely clear. Our Supreme Court in *South Haven* did not address the question of subject-matter jurisdiction, leaving intact the ruling of the Court of Appeals that jurisdiction was proper in the circuit court. However, in *South Haven* there was no request by taxpayers for a *refund* of the tax revenue at issue; instead, the city sought to have the money reallocated by the county so that some of the revenue would flow to the city. *South Haven*, 478 Mich at 525, 531 n 20, 531-533. Thus, *South Haven* does not answer the question whether a

_____

[3] At this juncture, there is no need to express an opinion on whether the township actually spent funds for a purpose that would not fall within the purpose approved by the voters. As previously stated, the "question of jurisdiction is not dependent on the truth or falsity of the allegations, but upon their nature." *Petersen*, 326 Mich App at 441-442.

[4] There is no claim that plaintiff seeks a "redetermination" of his taxes.

request by a taxpayer to have tax revenue returned based on a claim that the revenue was spent for an improper purpose constitutes a "refund" for purposes of the tax tribunal act and the issue of subject-matter jurisdiction. Additionally, the Court in *South Haven* was not asked to address the issue, thus, there is nothing in that opinion that could be cited to support a conclusion that the relief sought by plaintiff in the instant case either does or does not constitute a "refund" to taxpayers.[5]

The Court in *Romulus* came closer to addressing the question currently before this Court. In *Romulus*, the Court held that a claim by landowner plaintiffs for a return of escrowed tax funds based on allegations that the taxing authority committed a constructive fraud by improperly allocating those funds to unauthorized administrative expenses did not constitute a claim for a "typical tax refund" within the tax tribunal's exclusive jurisdiction under MCL 205.731(b) and MCL 205.774. *Romulus*, 413 Mich at 733-734, 745-747. Thus, the *Romulus* Court reasoned that "the Legislature has not shown a clear intent to abolish the circuit court's equity jurisdiction" under such circumstances. *Id.* at 746. However, the *Romulus* Court reached this conclusion based in part on the fact that money potentially subject to being returned to the taxpayers was being held in escrow and it was "not possible to determine that the funds in escrow were improperly withheld from the county." *Id.* at 746-747. Such factual circumstances are not present in the instant case where plaintiff seeks to have the township return tax money that it has already collected and allocated.

Thus, *Romulus* does not directly support plaintiff's argument. *Romulus* does, however, support the general proposition that the basis on which a plaintiff seeks money from the township that originated as tax revenue affects whether the relief claimed by plaintiff constitutes a "typical tax refund" such that the claim should be adjudicated in the tax tribunal or instead constitutes some other type of claim that properly belongs within the jurisdiction of the circuit court. The mere fact that a tax is involved does not automatically place the matter within the exclusive jurisdiction of the tax tribunal. Cf. *Petersen*, 318 Mich App at 449 ("The MTT does not have subject-matter jurisdiction over contract disputes simply because the substance of the contract regards special assessments.").

Furthermore, *Romulus* supports the conclusion that the Legislature did not intend to divest the circuit court of jurisdiction over claims that implicate issues concerning how a municipality

---

[5] Despite the broad reading of this decision advocated by plaintiff, our Supreme Court's decision in *South Haven* was limited to a narrow issue that is not implicated in this case and, further, does not address the pertinent issue currently before this Court. Specifically, the Supreme Court in *South Haven* explained that it had granted leave to appeal "limited to consideration of whether the city was entitled to any of the tax proceeds," ordering the parties "to address whether the ballot proposal violated the statute and, if so, what remedy might be available, and whether the parties by their conduct 'otherwise agreed' to a different allocation than that required by statute." *Id.* at 525. The Supreme Court's analysis of that issue simply has no bearing on whether a request by a *taxpayer*, rather than a *city*, to have millage revenue directly returned to the taxpayer based on a claim that the taxing authority misallocated the millage revenue for in improper purpose constitutes a "refund" for purposes of the tax tribunal act. It similarly does not support plaintiff's claim that he has standing to bring this action, which is discussed later in this opinion.

may lawfully *spend* money *after* it has been collected from taxes, in light of the nature of the tax tribunal's special expertise. As our Supreme Court explained in *Romulus*:

> The tribunal that was created to exercise such jurisdiction was labeled a "quasi-judicial agency", MCL 205.721, whose membership is to be comprised of persons with various specified qualifications. Of the seven members, two must be attorneys with experience either in property tax matters or in judicial or quasi-judicial office. MCL 205.722. One member must be a certified assessor; one, an experienced professional real estate appraiser; and one, a certified public accountant with experience in state-local tax matters. . . . [P]ersons who are not members of any of the enumerated disciplines are required to have experience in state or local tax matters.

> The expertise of the tribunal members can be seen to relate primarily to questions concerning the factual underpinnings of taxes. In cases not involving special assessments, the tribunal's membership is well-qualified to resolve the disputes concerning those matters that the Legislature has placed within its jurisdiction: assessments, valuations, rates, allocation and equalization. In special assessment cases, the tribunal is competent to ascertain whether the assessments are levied according to the benefits received. Although the tribunal, in making its determinations, will make conclusions of law, MCL 205.751, the matters within its jurisdiction under MCL 205.731 most clearly relate to the basis for a tax, and much less clearly to the proper uses which may be made of the funds once collected. [*Romulus*, 413 Mich at 737-738 (some citations omitted).]

Here, determining whether the trial court correctly concluded that the tax tribunal had exclusive subject-matter jurisdiction under MCL 205.731(b) requires a clear definition of the term "refund" as used in MCL 205.731(b) and MCL 205.774, both of which are contained within the Tax Tribunal Act. The *Romulus* Court did not define this term, although it stated that the factual circumstances in that case did not involve a "typical tax refund." *Romulus*, 413 Mich at 746.

Resolution of this question presents an issue of statutory interpretation. When interpreting the language of a statute, courts seek to "ascertain the legislative intent that may reasonably be inferred from the words expressed in the statute." *Koontz v Ameritech Servs, Inc*, 466 Mich 304, 312; 645 NW2d 34 (2002). "If the language of a statute is clear and unambiguous, the statute must be enforced as written and no further judicial construction is permitted." *Farris v McKaig*, 324 Mich App 349, 353; 920 NW2d 377 (2018) (quotation marks and citation omitted). "Courts must give effect to every word, phrase, and clause in a statute, and must avoid an interpretation that would render any part of the statute surplusage or nugatory." *Koontz*, 466 Mich at 312. Statutory "words and phrases shall be construed and understood according to the common and approved usage of the language; but technical words and phrases, and such as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate meaning." MCL 8.3a; see also *Farris*, 324 Mich App at 354.

Here, the term "refund" is not defined within the Tax Tribunal Act. See MCL 205.703. It is thus appropriate to consult dictionary definitions. *Farris*, 324 Mich App at 354. *Black's Law Dictionary* (11th ed) provides three definitions of "refund," two of which are relevant to the instant

case: "1. The return of money to a person who overpaid, such as a taxpayer who overestimated tax liability or whose employer withheld too much tax from earnings. 2. The money returned to a person who overpaid." The definition for the term "tax refund" is "[m]oney that a taxpayer overpaid and is thus returned by the taxing authority.—Also termed tax rebate." *Black's Law Dictionary* (11th ed). Accordingly, although these demonstrations show that a tax refund is accomplished by returning tax money to the taxpayer, it is also clear that a tax refund is given *based on some kind of overpayment*. In other words, the tax is refunded because the taxpayer did not owe the tax or owed less tax. That is not the basis on which plaintiff seeks monetary relief in this case.

According to the first amended complaint, plaintiff sought the return of millage funds based on his claims of "ASSUMPSIT (MONEY HAD AND RECEIVED)" and "UNJUST ENRICHMENT."

"Unjust enrichment is a cause of action to correct a defendant's unjust retention of a benefit owed to another." *Wright v Genesee Co*, 504 Mich 410, 417; 934 NW2d 805 (2019). "A claim of unjust enrichment can arise when a party has and retains money or benefits which in justice and equity belong to another." *Id*. at 418 (quotation marks and citation omitted). Though plaintiff's complaint contains a claim of "assumpsit," assumpsit has technically been abolished as a cause of action, but "the substantive remedies traditionally available under assumpsit were preserved[.]" *Youmans v Charter Twp of Bloomfield*, 336 Mich App 161, 213; 969 NW2d 570 (2021) (quotation marks and citation omitted; alteration in original). "At common law, assumpsit was a proper vehicle for recovering unlawful fees, charges, or exactions—including unlawful utility charges— that the plaintiff had paid to a municipality under compulsion of local law." *Id*. However, "an 'assumpsit' claim is modernly treated as a claim arising under 'quasi-contractual' principles, which represent 'a subset of the law of unjust enrichment.' " *Id*. (citation omitted).

"The remedy for unjust enrichment is restitution." *Wright*, 504 Mich at 418. "A claimant entitled to restitution may obtain a judgment for money in the amount of the defendant's unjust enrichment." *Id*. (quotation marks and citation omitted). "Restitution restores a party who yielded excessive and unjust benefits to his or her rightful position." *Id*. at 419. In sum, as our Supreme Court has explained,

> [u]njust enrichment has evolved from a category of restitutionary claims with components in law and equity into a unified independent doctrine that serves a unique legal purpose: it corrects for a benefit received by the defendant rather than compensating for the defendant's wrongful behavior. Both the nature of an unjust-enrichment action and its remedy—whether restitution at law or in equity— separate it from tort and contract. [*Id*. at 422.]

Additionally, plaintiff sought injunctive relief asking the court to enjoin the township from any further collection of the millage because the township was allegedly spending the revenue for unauthorized purposes. It is thus clear from examining plaintiff's first amended complaint that the essence of his claim is that because the township has collected revenue from a voter-approved millage and improperly spent that revenue for purposes not authorized by the voters, the township should be enjoined from further collecting the millage revenue and should also make restitution for its unauthorized actions by returning the millage proceeds to the voters. "It is well settled that

the gravamen of an action is determined by reading the complaint as a whole, and by looking beyond mere procedural labels to determine the exact nature of the claim." *Adams v Adams (On Reconsideration)*, 276 Mich App 704, 710-711; 742 NW2d 399 (2007).

Accordingly, the crucial issue to be adjudicated with respect to plaintiff's claims is whether the township improperly used the revenue from the millage and, if so, whether such a finding provides a proper basis for the remedies of restitution or injunctive relief.[6] Accordingly, because plaintiff only challenges the township's *use* of tax revenue that has already been collected and because plaintiff seeks restitution on that basis rather than a refund of a tax overpayment, the relief sought by plaintiff is not a "typical tax refund" and his claim does not fall within the tax tribunal's exclusive subject-matter jurisdiction under MCL 205.731(b) and MCL 205.774. See *Romulus* 413 Mich at 746-747.

Our Supreme Court's opinion in *Hillsdale* does not compel a different outcome. In *Hillsdale*, 494 Mich at 50 & n 2, the circuit court granted plaintiff's requested writ of mandamus to the extent of requiring the defendant county to levy the full amount of a millage that had been approved by the voters. Our Supreme Court addressed the issue "whether the Michigan Tax Tribunal possesse[d] jurisdiction over plaintiffs' claim for mandamus to enforce the terms of a property-tax ballot proposition that provided for the levy of an additional 0.5 mill property tax in Hillsdale County to fund plaintiff Hillsdale County Senior Services, Inc. (HCSS)." *Id*. at 48. The Court concluded that the case was within the tax tribunal's exclusive jurisdiction because "the heart of the dispute pertains to the 'amount of a charge' by defendant to its property taxpayers," which constituted a property tax "rate" for purposes of MCL 205.731(a). *Id*. at 53-55. The *Hillsdale* Court stated, "this case does not involve a proceeding for a refund under MCL 205.731(b); rather, it involves a proceeding under MCL 205.731(a)." *Id*. at 61.

The issue of how the millage revenue should be spent, which is the central issue in the instant case, was not before the Supreme Court in *Hillsdale*. Admittedly, the *Hillsdale* Court stated that "*Wikman* and *Romulus* are of limited application outside the context of special assessments." *Id*. at 59. Also, with respect to the issue presented in the instant case regarding jurisdiction over a matter involving a challenge to how tax revenue was spent, there does not seem to be any appreciable difference between whether that revenue was collected pursuant to a special assessment or a millage. Accordingly, we conclude that *Hillsdale* does not provide any rule or legal analysis that requires us to reach a different result in this case.

In the present case, as in *Romulus*, it is not the merely because plaintiff sought equitable relief that this case remains within the subject-matter jurisdiction of the circuit court. *Romulus*, 413 Mich at 746. Rather, the Legislature did not indicate a clear intent to divest the circuit court of jurisdiction over a matter of this type because the subject matter of plaintiff's complaint does not involve any of the enumerated issues in MCL 205.731(a) and the relief requested by plaintiff did not constitute a "refund" for purposes of MCL 205.731(b) and MCL 205.774. See *Wikman*, 413 Mich at 631. Accordingly, the trial court erred when deciding it lacked subject-matter

---

[6] At this juncture, we do not express an opinion on whether plaintiff would be entitled to either of these remedies if it were shown that the township improperly spent the millage funds.

-12-

jurisdiction. Consequently, we reverse that ruling. In light of our conclusion that the trial court had subject-matter jurisdiction, plaintiff's additional argument that the trial court was precluded from making additional alternative rulings (regarding standing and the application of *Bigger*) if the trial court did not have subject-matter jurisdiction[7] is moot. "An issue is deemed moot when an event occurs that renders it impossible for a reviewing court to grant relief." *B P 7 v Bureau of State Lottery*, 231 Mich App 356, 359; 586 NW2d 117 (1998).

## III. STANDING

Plaintiff next argues that the trial court erred by determining that he lacked standing to bring this lawsuit.

## A. STANDARD OF REVIEW

Whether a party has standing presents a question of law that this Court reviews de novo. *Glen Lake-Crystal River Watershed Riparians v Glen Lake Ass'n*, 264 Mich App 523, 527; 695 NW2d 508 (2004). This Court "review[s] de novo a trial court's decision to grant or deny a motion for summary disposition." *Winkler*, 500 Mich at 333.

## B. ANALYSIS

In Michigan, courts employ a "limited, prudential approach" to standing. *Lansing Sch Ed Ass'n v Lansing Bd of Ed*, 487 Mich 349, 352-353; 792 NW2d 686 (2010). "[T]he standing inquiry focuses on whether a litigant is a proper party to request adjudication of a particular issue and not whether the issue itself is justiciable." *Id*. at 355 (quotation marks and citation omitted).

In *Lansing*, the Supreme Court held:

We hold that Michigan standing jurisprudence should be restored to a limited, prudential doctrine that is consistent with Michigan's long-standing historical approach to standing. Under this approach, a litigant has standing whenever there is a legal cause of action. Further, whenever a litigant meets the requirements of MCR 2.605, it is sufficient to establish standing to seek a declaratory judgment. Where a cause of action is not provided at law, then a court should, in its discretion, determine whether a litigant has standing. A litigant may have standing in this context if the litigant has a special injury or right, or substantial interest, that will be detrimentally affected in a manner different from the citizenry at large or if the statutory scheme implies that the Legislature intended to confer standing on the litigant. [*Id*. at 372.]

---

[7] "When a court lacks subject-matter jurisdiction, the court's acts and proceedings are of no force and validity." *Trost v Buckstop Lure Co, Inc*, 249 Mich App 580, 586; 644 NW2d 54 (2002) (quotation marks and citation omitted).

The Supreme Court explained the historical development of Michigan's standing doctrine in relevant part as follows:

> Historically, the standing doctrine grew out of cases where parties were seeking writs of mandamus to compel a public officer to perform a statutory duty. Standing was a prudential limit, which is to say that the court's decision to invoke it was "one of discretion and not of law." The general rule was that a court would not hear a case where "an individual citizen, who is only interested in common with all other citizens of the state in the subject matter of [the] complaint," was suing a public entity to force compliance with a legal duty. Generally, the court exercised its discretion to hear a case if the citizen had "some individual interest in the subject matter of [the] complaint which is not common to all the citizens of the state . . . ." This was sometimes articulated as a special or specific injury or interest. [*Id*. at 355-356 (citations omitted; alterations and ellipsis in original).]

At issue in the instance case is a concept sometimes referred to as "taxpayer standing." "Traditionally, a private citizen has no standing to vindicate a public wrong or enforce a public right if he or she has not been injured in a manner that is different from the public at large. Therefore, under general standing principles, a taxpayer has no standing to challenge the expenditure of public funds if the threatened injury to him or her is no different than that to taxpayers generally." *Mich Ass'n of Home Builders v City of Troy*, 504 Mich 204, 226; 934 NW2d 713 (2019) (citation omitted). Accord *Waterford Sch Dist v State Bd of Ed*, 98 Mich App 658, 662; 296 NW2d 328 (1980) ("Traditionally, a private citizen has no standing to vindicate a public wrong or enforce a public right where he is not hurt in any manner differently than the citizenry at large. Therefore, a taxpayer has no standing to challenge the expenditure of public funds where the threatened injury to him is no different than that to taxpayers generally.") (citation omitted).

In *Waterford*, this Court noted that this common-law bar on taxpayer lawsuits could be relaxed by statute. *Id*. at 662-663. The statute cited in *Waterford*, MCL 600.2041(3), is not implicated here because that statute pertains to actions to "prevent the illegal expenditure of *state* funds." MCL 600.2041(3); *Waterford*, 98 Mich App at 663 (emphasis added). However, there is an analogous statute relevant to the factual circumstances in this case. MCL 129.61 specifically grants standing in certain taxpayer actions if specific conditions are met. That statute provides:

> Any person or persons, firm or corporation, resident in any township or school district, paying taxes to such political unit, may institute suits or actions at law or in equity on behalf of or for the benefit of the treasurer of such political subdivision, for an accounting and/or the recovery of funds or moneys misappropriated or unlawfully expended by any public officer, board or commission of such political subdivision. Before such suit is instituted a demand shall be made on the public officer, board or commission whose duty it may be to maintain such suit followed by a neglect or refusal to take action in relation thereto. Security for costs shall be filed by the plaintiff or plaintiffs in any such suit or action and all costs and expenses of the same shall be paid by the person or persons instituting the same unless and until a recovery of such funds or moneys be obtained as the result of such proceedings. [MCL 129.61.]

-14-

Our Supreme Court has explained that MCL 129.61 reflects the Legislature's authorization of lawsuits by individual township taxpayers to recover funds misappropriated or unlawfully expended by any public officer, board or commission of the township, if all of the statutory prerequisites are fulfilled. *Rohde v Ann Arbor Pub Sch*, 479 Mich 336, 346; 737 NW2d 158 (2007), overruled in part on other grounds by *Lansing*, 487 Mich 349.[8]  The *Rohde* Court further explained some of the statutory requirements in MCL 129.61 as follows:

> The statute provides that before a taxpayer may institute a lawsuit, a demand must be made "on the public officer, board or commission whose duty it may be to maintain such suit" for recovery of unlawfully expended funds. The statute does not expressly require that the demand be for a lawsuit. Further, just because the public body has the ultimate duty to bring a lawsuit if it is needed does not mean that the demand must be for a lawsuit. The taxpayer demand, at a minimum, calls on a conscientious public body to reevaluate whether it is carrying out its duties properly and, in fact, this may result in the public body's acting in compliance with the demand. It may do this by any number of means, only one of which is to enter into litigation. In fact, when the statute uses the phrase "whose duty it may be to maintain such suit" (emphasis added), it recognizes this. Moreover, the statute provides that after a demand, before the taxpayer may bring a suit, a precondition is that the public body must neglect or refuse "to take action in relation thereto." This implies that the public body need not necessarily file suit, only that it needs to take some kind of action relating to the matter. [*Rohde*, 479 Mich at 345-346.]

Here, plaintiff alleged that he resided in the township and paid taxes to the township, and he brought an action against the township to recover funds he alleged had been unlawfully expended by the township. Thus, plaintiff could potentially satisfy the requirements for standing under MCL 129.61. However, plaintiff does not claim to have made any kind of "demand" before initiating this lawsuit. Therefore, plaintiff did not satisfy the prerequisites for bringing an action under MCL 129.61. With respect to an alleged statutory violation, "a private cause of action does not exist where the statute provides a comprehensive, exclusive scheme of enforcement of the rights and duties it creates." *Home Builders*, 504 Mich at 223 (quotation marks and citation omitted). Because plaintiff has not satisfied the statutory prerequisites under MCL 129.61, plaintiff has failed to demonstrate he has standing to bring this action.

Moreover, even when there exists a statute that relaxes the common-law bar on taxpayer suits, "[t]he taxpayers must demonstrate that they will sustain substantial injury or suffer loss or damage as taxpayers, through increased taxation and the consequences thereof." *Waterford*, 98 Mich App at 663. Rather than address the requirements of taxpayer standing, plaintiff merely argues that these principles do not apply. However, considering that plaintiff has attempted to

---

[8] In *Rohde*, 479 Mich at 340, our Supreme Court held "that MCL 129.61 is unconstitutional to the extent that it confers standing on taxpayers who do not meet the three-part test for determining whether a party has constitutional standing." However, in *Lansing*, the Court subsequently overruled *Rohde* and other cases applying a constitutional standing requirement. *Lansing*, 487 Mich at 352-353, 359-360, 371 n 18. Accordingly, MCL 129.61 remains good law under our Supreme Court's current standing jurisprudence.

-15-

challenge the township's use of the millage tax revenue that plaintiff claims to have paid as a property owner in the township, the principles of taxpayer standing undoubtedly apply. See *Home Builders*, 504 Mich at 226; *Waterford*, 98 Mich App at 662-663; MCL 129.61. As explained above, plaintiff has not demonstrated that he possesses standing to bring this action.

To the extent this reasoning differs from the trial court's reasoning for determining that plaintiff did not have standing, this Court may nonetheless affirm a trial court's decision that reaches the correct result for different reasons. See *Kyocera Corp v Hemlock Semiconductor, LLC*, 313 Mich App 437, 449; 886 NW2d 445 (2015) ("We will affirm a trial court's decision on a motion for summary disposition if it reached the correct result, even if our reasoning differs."). Thus, we affirm the trial court's conclusion that plaintiff lacked standing, and the trial court's grant of summary disposition in favor of the township is affirmed on that basis.

Given this conclusion, we decline to address plaintiff's final argument that the trial court erred in its application of *Bigger*. Even if plaintiff were correct that his action was not barred by the holding in *Bigger*, he still does not have standing to bring his claim and there is no relief this Court may grant based on this issue. Thus, the issue is moot. *B P 7*, 231 Mich App at 359.

Affirmed. No costs are awarded to either party, a public question being involved. MCR 7.216(A)(7) and MCR 7.219(A). *City of Bay City v Bay County Treasurer*, 292 Mich App 156, 172; 807 NW2d 892 (2011).

/s/ Mark J. Cavanagh
/s/ Jane E. Markey
/s/ Stephen L. Borrello