*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

BRANDON BUNKELMAN,

        Plaintiff-Appellant,

v

DEPARTMENT OF LICENSING AND
REGULATORY AFFAIRS,

        Defendant-Appellee.

UNPUBLISHED
June 05, 2026
1:13 PM

No. 373540
Livingston Circuit Court
LC No. 2023-000318-AA

Before: TREBILCOCK, P.J., and BOONSTRA and LETICA, JJ.

PER CURIAM.

The Department of Licensing and Regulatory Affairs (LARA) denied Brandon Bunkelman's application for an elevator journeyman's license based on its conclusion that his long tenure in the elevator industry lacked the statutorily required supervisory experience. After the original circuit-court judge ordered LARA to issue Bunkelman a license restricted to his experience, a different circuit-court judge vacated that order on reconsideration and affirmed LARA's original decision to deny Bunkelman's license application. Bunkelman now urges this Court to set aside that order granting reconsideration, raising arguments primarily grounded in statutory interpretation. We affirm.

## I. OVERVIEW OF RELEVANT STATUTORY SCHEMES

Two statutory schemes govern elevator-related licensure in Michigan: the elevator licensing act (the ELA), MCL 338.2151 *et seq*., and the elevator safety board act, MCL 408.801 *et seq*. The former provides for the licensing of an elevator journeyman—that is, "a person who is qualified and licensed . . . to perform, or to provide supervision in the performance of, the work of installation, alteration, maintenance, repair, servicing, adjusting, inspecting, or testing of elevators." MCL 338.2151(2). The elevator safety board act, for its part, regulates elevator contractors—i.e., those "engaged in *the business of*" elevator construction, installation, maintenance, repair, or alteration. MCL 408.803(2) (emphasis added). Although distinct enactments, the ELA incorporates several of the elevator safety board act's provisions by

reference, including those related to definitions and rule promulgation. MCL 338.2151(1); MCL 338.2153.

Most relevant to this appeal is MCL 338.2156(4), the statute governing licensure for elevator journeymen. Its first sentence provides that "[a]n elevator journeyman's license shall be issued, after the *approval of the [elevator safety] board and after an applicant successfully passes an examination, to an applicant having a minimum of 3 years of continuous employment as a supervisor of elevator construction or service*, or as an elevator constructor, serviceman, maintenance man, or repairman." (Emphasis added.) MCL 338.2156(4) concludes: "The license may be restricted to specific types of work by the director." *Id.* See also MCL 338.2151(1) (applicability of definitions); MCL 408.802(2) (defining "[b]oard").

Procedurally, LARA handles elevator-journeyman-license applications through its Bureau of Construction Codes (the BCC).[1] If the BCC denies an application, the applicant may appeal to the elevator safety board (the ESB), MCL 408.808(1)(d); MCL 338.2153; Mich Admin Code, R 408.7023, which in turn makes recommendations to LARA regarding resolution of the appeal and issuance of a final order, MCL 339.3102(II)(A)(2). LARA then has the ultimate authority to either affirm or reverse the BCC's denial. See MCL 339.3102. A dissatisfied applicant can appeal LARA's final decision to the circuit court. *South Dearborn Environmental Improvement Ass'n, Inc v Dep't of Environmental Quality*, 336 Mich App 490, 498; 971 NW2d 46 (2021); Const 1963, art 6, § 28.

## II. FACTUAL BACKGROUND

With this statutory framework in mind, we turn to the largely undisputed facts of this case.

Bunkelman applied for an elevator journeyman's license on the basis of his supervisory employment history. In his application and accompanying resume, Bunkelman listed 15 years' of experience within the elevator sales, service, and repair industry, including eight years working in service- and repair-related sales; two years as a district service-sales manager; three years working as a regional director of service and repair; and most recently before his application, just under two years as a district branch manager, in-part overseeing more than 50 licensed elevator journeymen.

---

[1] Both acts define "[d]epartment" and "[d]irector" in relation to the Department of Labor. MCL 338.2151(1); MCL 408.802(2) and (3). And as set forth earlier, MCL 338.2156(4) requires "approval of the board" before issuance of an elevator journeyman's license. After various executive orders, however, the acts' administration and rule-promulgation authority—including approval of elevator-journeyman-license applications—now fall within the purview of LARA (and, where relevant, the BCC). See Executive Order No. 1996-2; Executive Order No. 2003-14; Executive Order No. 2011-4; Executive Order No. 2017-3; MCL 339.3102. See also *About the Bureau of Construction Codes*, Department of Licensing and Regulatory Affairs <https://www.michigan.gov/lara/bureau-list/bcc/bcc---full-description> (accessed April 27, 2026).

The BCC denied Bunkelman's application because he did "not present sufficient evidence" demonstrating that he had at least three consecutive years as a "supervisor of elevator construction or service" as required by MCL 338.2156(4). More specifically, the BCC determined that his "work experience consist[ed] exclusively within the sales realm of the elevator industry," which it concluded fell outside the statutorily required experience "consist[ing] of the construction, servicing and maintenance of elevators." Bunkelman sent the BCC a reconsideration letter further detailing the scope of his relevant work experience, but the BCC still found the statutorily required experience lacking. Additionally, the BCC explained, it consistently interpreted and enforced MCL 338.2156(4) as requiring the person supervising elevator construction or service to hold either an elevator journeyman's or an elevator contractor license, neither of which Bunkelman had.

Bunkelman appealed the BCC's denial to the ESB, arguing it hinged on a mischaracterization of his work history and misconstruction of MCL 338.2156(4). He claimed— as he does in this Court—that the statute mandated issuance of a license to applicants having at least "three years of continuous employment *as either* (1) a 'supervisor o[f] elevator construction or service' or (2) as an elevator constructor, serviceman, maintenance man, or repairman." (Emphasis added.) Bunkelman further noted that the statute allowed for restricting an applicant's license to specific types of work, and nothing prevented issuance of "a journeyman elevator license in the supervision of elevator construction and services."

The ESB considered Bunkelman's appeal at an open meeting. See MCL 408.808(3); MCL 338.2153. Though there is no transcript, the meeting minutes indicate the ESB "posed numerous questions" to Bunkelman "regarding his work experience and license application and considered his responses." Ultimately, the ESB recommended LARA deny Bunkelman's appeal because he "failed to demonstrate direct supervision of apprentices or mechanics on a day-to-day basis." Upon review of the record and consideration of the ESB's recommendation, LARA affirmed the BCC's previous denial of his application "due to a lack of experience as required by MCL 338.2156."

Bunkelman then filed an appeal in the circuit court, claiming LARA erred as a matter of law by denying his application and subsequent appeal on the basis of its misconstruction of the statutory requirements. The case was initially assigned to Judge Michael P. Hatty, who concluded LARA's denial of Bunkelman's application was contrary to the plain language of MCL 338.2156(4). In Judge Hatty's view, the statute and record evidence entitled Bunkelman to an elevator journeyman's license limited to supervisory and clerical tasks due to Bunkelman's "work history that clearly fits within the statutory scheme." Judge Hatty thus ordered LARA to grant Bunkelman a restricted elevator journeyman's license allowing him to "do all acts contemplated and permitted for a journeyman licensed holder except . . . the actual construction or repair of elevators."

LARA moved for reconsideration of that order. The case was eventually reassigned to Judge McGivney, who disagreed with the reading advanced by Bunkelman and adopted by Judge Hatty. Judge McGivney relevantly concluded that Bunkelman misconstrued—and "misled" Judge Hatty into interpreting—the statutory licensure requirements as including previous experience in a "supervisory role of any kind." In Judge McGivney's view, Judge Hatty committed palpable error by declining to give deference to LARA's interpretation of the MCL 338.2156(4). On these and other bases, Judge McGivney granted LARA's motion for reconsideration, vacated Judge

Hatty's order, and affirmed LARA's final decision denying Bunkelman an elevator journeyman's license.

Bunkelman now appeals as on leave granted.

## III. STANDARDS OF REVIEW

Bunkelman challenges LARA's final decision denying his elevator-journeyman-license application, as well as Judge McGivney's reinstatement of that decision on LARA's motion for reconsideration. These claims implicate several standards of review, the interaction of which is critical.

### A. CIRCUIT COURT'S REVIEW

*Agency Determinations*. The parties agree that the final agency decision at issue did not involve a contested-case hearing. Accordingly, judicial review is limited to determining whether the agency's decision was authorized by law. *Oshtemo Charter Twp v Kalamazoo Co Rd Comm*, 302 Mich App 574, 582; 841 NW2d 135 (2013). "An agency's decision is not authorized by law if it violates a statute or constitution, exceeds the statutory authority or jurisdiction of the agency, is made after unlawful procedures that result in material prejudice, or is arbitrary and capricious." *Id*. at 582-583. In turn, a decision is arbitrary and capricious when it "lacks an adequate determining principle"; "reflects an absence of consideration or adjustment with reference to principles, circumstances, or significance"; or "is freakish or whimsical." *South Dearborn*, 336 Mich App at 499 (quotation marks and citation omitted). This authorized-by-law standard "focuses on the agency's power and authority to act rather than on the objective correctness of its decision." *Id*. (quotation marks and citation omitted).

*Remaining Standards*. To succeed on a motion for reconsideration in the circuit court, the movant "must demonstrate a palpable error by which the court and the parties have been misled and show that a different disposition of the motion must result from correction of the error." MCR 2.119(F)(3). A "palpable" error is one that is "easily perceptible, plain, obvious, readily visible, noticeable, patent, distinct, manifest." *Luckow v Luckow*, 291 Mich App 417, 426; 805 NW2d 453 (2011) (quotation marks, brackets, and citations omitted). The circuit court reviews de novo issues of statutory interpretation. *Oshtemo Charter Twp*, 302 Mich App at 583.

### B. THIS COURT'S REVIEW

This Court reviews a circuit court's decision on a motion for reconsideration for an abuse of discretion, *K & W Wholesale, LLC v Dep't of Treasury*, 318 Mich App 605, 611; 899 NW2d 432 (2017), which occurs when the court's "decision falls outside the range of reasonable outcomes," *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, 347 Mich App 280, 294; 14 NW3d 472 (2023). A decision premised on "an error of law" necessarily constitutes an abuse of discretion. *Id*. at 294-295. This Court reviews de novo, however, "whether an agency's action complied with a statute" and whether the court circuit applied the correct standard of review. *Natural Resources Defense Council v Dep't of Environmental Quality*, 300 Mich App 79, 87-88; 832 NW2d 288 (2013). We also review de novo the proper interpretation, construction, and

application of a statute. *Armijo v Bronson Methodist Hosp*, 345 Mich App 254, 262-263; 4 NW3d 789 (2023).

## IV. ANALYSIS

Bunkelman contends the BCC, ESB, and LARA each erred as a matter of law by denying (or recommending denial of) his elevator-journeyman-license application. Judge McGivney likewise erred, Bunkelman says, by granting LARA's motion for reconsideration, vacating Judge Hatty's order, and reinstating LARA's denial of his application. We disagree.

### A. INTERPRETATION OF MCL 338.2156(4)

At the heart of Bunkelman's appellate arguments is his belief that he is statutorily entitled to an elevator journeyman's license under MCL 338.2156(4) by virtue of his proffered supervisory work experience. Accordingly, we must interpret that statute's licensure requirements.

"The primary goal of statutory interpretation is to give effect to the legislative intent, which begins by examining the plain language of the statute." *O'Halloran v Secretary of State*, 515 Mich 606, 630; 29 NW3d 429 (2024). We apply clear and unambiguous statutory language as written, reading nothing into it "that is not within the manifest intent of the Legislature as derived from the words of the statute itself." *Nickola v MIC Gen Ins Co*, 500 Mich 115, 123; 894 NW2d 552 (2017) (quotation marks and citations omitted). Nor can we ignore or render meaningless any statutory language. *Meier v Pub Sch Employees' Retirement Sys*, 343 Mich App 571, 578; 997 NW2d 719 (2022). Rather, "the statute must be read as a whole and in a manner that ensures that it works in harmony with the entire statutory scheme." *Christie v Wayne State Univ*, 511 Mich 39, 48; 993 NW2d 203 (2023). Finally, reviewing courts owe no deference to agency interpretations, only "respectful consideration." *Meier*, 343 Mich App at 578 (quotation marks and citation omitted). That is, we consider agency interpretations to the extent they "may be helpful when construing a provision with a doubtful or obscure meaning," *id.*, and will not overrule persuasive agency interpretations "without cogent reasons," *In re Complaint of Rovas Against SBC Mich*, 482 Mich 90, 108; 754 NW2d 259 (2008). Such interpretations, however, cannot conflict with a statute's plain meaning. *Meier*, 343 Mich App at 578.

We begin, as we must, with the statutory language in dispute. Again, it provides:

> An elevator journeyman's license shall be issued, *after the approval of the board and after an applicant successfully passes an examination*, *to an applicant having a minimum of 3 years of continuous employment as a supervisor of elevator construction or service*, or as an elevator constructor, serviceman, maintenance man, or repairman. [MCL 338.2156(4) (emphasis added).]

The emphasized language sets forth three requirements for the issuance of an elevator journeyman's license on the basis of supervisory experience: (1) board (now LARA) approval; (2) passing of an examination; and (3) three years' continuous employment as a supervisor of elevator construction or service. Because there is no dispute Bunkelman passed the examination, we focus on the remaining requirements: LARA approval and qualifying experience as a supervisor.

-5-

Begin with what it means to be a "supervisor." Our Legislature chose not to define the phrase "supervisor of elevator construction or service" as used in MCL 338.2156(4).[2] Nor did it expressly limit the scope of that phrase in the statute itself or broader statutory schemes. LARA interprets this language to mean that qualifying supervisory experience requires direct or immediate supervision of the type of work within which the applicant seeks a license, which in turn requires applicable licensure. We see no cogent reason to depart from this ordinary meaning of "supervisor." Indeed, at the time of the ELA's enactment, that term was relevantly defined as "a person who supervises," while "supervise" meant "to oversee (a process, work, workers, etc.) during execution or performance[.]" *The Random House College Dictionary, Revised Edition* (1975), p 1320. See *Grand Rapids v Brookstone Capital, LLC*, 334 Mich App 452, 464; 965 NW2d 232 (2020) ("Terms that are not defined in a statute must be given their plain and ordinary meanings, and it is appropriate to consult a dictionary for definitions.") (quotation marks and citation omitted).

The ELA's structure, as a whole, buttresses this conclusion. It defines an elevator journeyman as a person "*qualified* and licensed . . . *to perform, or to provide supervision in the performance of*," enumerated elevator *work*, MCL 338.2151(2) (emphasis added). And in several instances, the ELA mandates immediate and direct supervision of work by licensed journeymen. See MCL 338.2156(3) (requiring elevator contractors' employees to perform work under the immediate supervision of licensed elevator journeymen); MCL 338.2155(1) (limiting performance of elevator work to licensed elevator journeymen and helpers under their immediate supervision).

We reject Bunkelman's invitation to apply the principle that the inclusion of language in one statute reveals an intent to exclude such language in another as meaning that the Legislature intended to omit "direct" from the supervisory requirement in MCL 338.2156(4). True, we "cannot assume that the Legislature inadvertently omitted from one statute the language that it placed in another statute[.]" *South Haven v Van Buren Co Bd of Comm'rs*, 478 Mich 518, 530; 734 NW2d 533 (2007) (quotation marks and citations omitted). But neither can we view the term "supervisor" in isolation to the exclusion of its relevant context—doing so eschews this Court's dictate that "we must consider both the plain meaning of the critical word or phrase as well as its placement and purpose in the statutory scheme." *State ex rel Gurganus v CVS Caremark Corp*, 496 Mich 45, 60-61; 852 NW2d 103 (2014) (quotation marks and citation omitted). What is more, we "must look to the object of the statute, the harm it is designed to remedy, and apply a reasonable construction that best accomplishes the purpose of the statute. Statutory language should be construed reasonably, keeping in mind the purpose of the act." *Elizabeth Trace Condo Ass'n v American Global Enterprises, Inc*, 340 Mich App 435, 441; 986 NW2d 412 (2022) (quotation marks and citation omitted).

Adhering to these well-grounded principles, the meaning of supervisor as used in MCL 338.2156(4) comes into focus: an individual *qualified* to supervise others *performing*

---

[2] Certain definitions from the American standard safety code apply to the ELA. MCL 408.801; MCL 408.804(7); MCL 338.2151(1). Because neither party cites any provisions of that code, we assume for purposes of this opinion that nothing in the code lends insight into the meaning of the relevant statutory phrase.

elevator work.  Because all work under the ELA must be performed by a licensed journeyman or someone working under the immediate supervision of a licensed journeyman, MCL 338.2155(1); MCL 338.2156(3), that supervisor must be licensed to do the type of work he or she is supervising the performance of.  It would be an absurd interpretation to grant an applicant with only three years of indirect, tangential supervisory experience a license to perform elevator work, immediately supervise unlicensed workers, or both.[3]  Cf. *Dep't of Transp v Riverview-Trenton R Co*, 332 Mich App 574, 609; 958 NW2d 246 (2020) ("Just as statutory language should not be interpreted in a way that renders any portion nugatory, this Court must also avoid interpreting such language in an absurd or illogical way.").

What is more, while the Legislature did not specifically define the phrase "supervisor of elevator construction or service," it did grant LARA the statutory authority to determine applicant qualifications and promulgate rules for elevator-journeyman licensure.  MCL 408.808(1)(a) and (b); MCL 338.2153.   See also MCL 339.3102(I)(A)(3) and (B) (transferring ESB powers to LARA).  This is where the final requirement—LARA approval—comes in.  Viewed in tandem with LARA's rulemaking and applicant-qualification-determination duties, that requirement gives LARA discretion to set appropriate limitations on the type of supervisory work qualifying an applicant for licensure.   Concluding otherwise would render the approval requirement meaningless—if LARA had no discretion to determine the scope of requisite supervisory experience, there would be no need for its approval in the first place.  See *Meier*, 343 Mich App at 578 (courts must avoid rendering statutory language meaningless).

LARA approval and experience as "a supervisor of elevator construction or service" thus go hand-in-hand in determining whether an applicant is entitled to an elevator journeyman's license under MCL 338.2156(4).  While the latter may have broad application when read in isolation, the former grants LARA discretion to limit the scope of qualifying supervisory work experience.  But such discretion is not unlimited.  The final licensure decision—and, thus, any applicable limitation on the scope of qualifying supervisory experience—must be authorized by law.  *Oshtemo Chater Twp*, 302 Mich App at 582.

## B. APPLICATION

### 1. LARA'S DENIAL OF BUNKELMAN'S APPLICATION

Bunkelman first claims LARA's final decision denying him licensure violated MCL 338.2156(4) or otherwise constituted a legal error, thus rendering the decision unauthorized by law.  We cannot agree.

---

[3] Bunkelman correctly points out that the statutory schemes do not require licensure to supervise *licensed* elevator journeymen (assuming, of course, that they are performing types of work within the scope of their particular license).  We disagree, however, that supervision of licensed elevator journeymen necessarily demonstrates an applicant's qualifications to "teach" or supervise unlicensed individuals, particularly where the applicant does not qualify for an elevator journeyman's license based on work, rather than supervisory, experience.

In its final decision and order, LARA affirmed the BCC's denial of Bunkelman's elevator-journeyman-license application because Bunkelman "failed to establish the necessary experience requirements in MCL 338.2156." There is no dispute that LARA found Bunkelman's supervisory experience lacking because it did not involve regular, direct supervision of elevator fieldwork. And in LARA's view, Bunkelman could not directly supervise such work without already having an elevator journeyman's license or elevator contractor license, which he did not.

Bunkelman correctly notes that neither MCL 338.2156(4) nor the governing statutory schemes expressly require applicants to have preexisting licensure or directly supervise fieldwork as part of their experience as a "supervisor of elevator construction or service." Regardless of the interpretation of that phrase's scope, however, MCL 338.2156(4) *does* separately require LARA's approval. And LARA's conditioning of its approval (for supervisor-experience-only applicants) on preexisting licensure or direct supervision of fieldwork is not unauthorized by law.

Recall, our Legislature made LARA responsible for determining applicant qualifications and promulgating rules governing elevator-journeyman licensure. MCL 408.808(1)(a) and (b); MCL 338.2153; MCL 339.3102(I)(A)(3) and (B). While the ELA and elevator safety board act are each silent as to the scope of the phrase "supervisor of elevator construction or service" as used in MCL 338.2156(4), LARA's statutory authority to approve or disapprove applications necessarily includes discretion to impose authorized-by-law limits on the type of supervisory experience necessary for its approval.

The experience requirements at issue in this case do not conflict with any statutory or constitutional provisions, nor is their application arbitrary and capricious. Rather, they can reasonably be understood as efforts to promote safety, standardization, and code compliance within the elevator industry—goals that animate the ELA and the rules LARA has promulgated thereunder. See, e.g., MCL 338.2154 (allowing for modification of rules when applicable "in a manner not contrary to the public interest and so that the spirit of the rules shall be observed, public safety secured, and substantial justice done"); Mich Admin Code, R 408.7001 (stating that the rules promulgated in furtherance of the ELA and elevator safety board act "establish, for protection of the general public, minimum safety requirements for inspection, construction, installation, alteration, maintenance, repair, and operation of elevators"); Mich Admin Code, R 408.7003 (adopting certain national standards).

Apart from his disagreement with LARA's application of MCL 338.2156(4), Bunkelman makes no claim that LARA failed to comply with proper procedures when considering his application. And despite Bunkelman's (unsupported) implications to the contrary, there is no indication LARA, the BCC, or the ESB held Bunkelman to a different standard than any other applicant. In fact, Bunkelman's requested license (and the license Judge Hatty ordered LARA to issue him) does not fit within any of the existing classifications of elevator-journeymen's licenses

LARA has promulgated. Mich Admin Code, R 408.7018. Bunkelman has not challenged the propriety of these classifications; he merely asks us to depart from them.[4]

As set forth, LARA's denial of Bunkelman's application did not violate a statute or constitution; did not exceed its authority or jurisdiction; was not made after unlawful procedures (or result in material prejudice); and was not arbitrary and capricious. The decision, therefore, was authorized by law. *Oshtemo Charter Twp*, 302 Mich App at 582-583.

Disagreeing, Bunkelman insists LARA's conditions to licensure exceed the Legislature's intended scope of the phrase "supervisor of elevator construction or service" for purposes of MCL 338.2156(4). He offers, however, no meaningful interpretation as to the scope of that phrase. And as discussed, LARA's approval is a separate requirement for licensure under MCL 338.2156(4), distinct from qualifying supervisory experience. Bunkelman does not point us to any statutory provision or administrative rule prohibiting LARA from imposing such conditions on its approval or otherwise limiting its discretion to approve license applications. To the extent Bunkelman also challenges LARA's findings as to the nature of his work experience, these are factual determinations outside the scope of judicial review in this case. *Natural Resources Defense Council*, 300 Mich App at 87 ("When the agency's governing statute does not require the agency to conduct a contested case hearing, the circuit court may not review the evidentiary support underlying the agency's determination.").

Bunkelman further argues that requiring preexisting licensure for supervisory applicants effectively writes the supervisor-only track to licensure out of MCL 338.2156(4), because an already licensed individual would have no reason to apply under that statute. But this ignores the different elevator-journeymen-license (and elevator-contractor-license) classifications promulgated by LARA, from broadest to least: Type A, covering elevator "construction, repair, installation, alteration, and maintenance"; (2) Type B, covering elevator "repair and maintenance"; and (3) Type C, covering "specific installations designed for particular and special purposes for which the applicant proves that he or she is qualified." Mich Admin Code, R 408.7018(1)(a) to (c). As set forth, these licenses apply to distinct types of elevator "work" (e.g., construction work, repair work, etc.).[5]

---

[4] Because Bunkelman has not substantively challenged the LARA-promulgated license classifications set forth in Mich Admin Code, R 408.7018, he has abandoned any such argument. See *Highland Park v State Land Bank Auth*, 340 Mich App 593, 612; 986 NW2d 638 (2022) ("If a party fails to adequately brief a position, or support a claim with authority, it is abandoned.") (quotation marks and citation omitted). We therefore assume without deciding that these license classifications are proper.

[5] Several provisions of the ELA indicate that our Legislature understood there to be several distinct types of elevator "work." For example, MCL 338.2151(2) defines an elevator journeyman as a person qualified and licensed to perform or supervise "*the work of* installation, alteration, maintenance, repair, servicing, adjusting, inspecting, or testing of elevators." (Emphasis added.) And MCL 338.2155(1) restricts who can perform "*[t]he work* of installation, alteration, maintenance, repair, servicing, inspecting, adjusting, or testing of an elevator" controlled by the

Contrary to Bunkelman's assertions, licensed elevator journeymen with less expansive licenses have reason to apply for other, more expansive elevator journeymen's licenses. For example, elevator journeymen with Type B licenses may perform (or supervise the performance of) elevator repair or maintenance. They are not, however, authorized to perform or supervise elevator construction, installation, or alteration without the immediate supervision of elevator journeymen with applicable Type A licenses. Elevator journeymen with Type B licenses thus have reason to apply for broader Type A licenses after three years' continuous experience (1) performing or supervising elevator repair or maintenance, and (2) performing elevator construction, installation, or alteration with appropriate supervision.

In sum, LARA has the discretion to impose appropriate limitations on the type of supervisory experience necessary for its licensure approval under MCL 338.2156(4), and the conditions it imposed when denying Bunkelman's application were authorized by law.

2. REINSTATEMENT OF LARA'S DENIAL

Bunkelman further argues that Judge McGivney erred by granting LARA's motion for reconsideration, vacating Judge Hatty's order, and reinstating LARA's denial of his application. We again disagree.

As discussed, LARA's denial of Bunkelman's license application was authorized by law. Judge Hatty therefore had no basis to disturb its final decision, and palpably erred by doing so. Accordingly, Judge McGivney correctly vacated Judge Hatty's order and reinstated LARA's denial of Bunkelman's application. Though Bunkelman raises several challenges to Judge McGivney's reasoning, "we will not reverse a trial court's decision when it reaches the right result, even if it was for the wrong reason." *Bailey v Antrim Co*, 341 Mich App 411, 420; 990 NW2d 372 (2022). Because Judge McGivney reached the correct result, Bunkelman is not entitled to the appellate relief requested.

V. CONCLUSION

For these reasons, we affirm the trial court's judgment.

/s/ Christopher M. Trebilcock
/s/ Mark T. Boonstra
/s/ Anica Letica

---

elevator safety board act. (Emphasis added.) Finally, MCL 338.2156(4) allows LARA to restrict licenses to "specific types of work."